39 C.C.P.A.(Patents)
LEVER BROS. CO. v. BABSON BROS. CO.

No. 5865.

United States Court of Customs and Patent Appeals.

June 24, 1952.

O'Connell and Worley, JJ., dissented.

Spencer A. Studwell, New York City, for appellant.

Jules L. Brady and John Rex Allen, Chicago, Ill. (Francis C. Browne and William E. Schuyler, Jr., Washington, D. C., of counsel), for appellee.

Before GARRETT, C. J., and JACKSON, O'CONNELL, JOHNSON, and WORLEY, JJ.

On Petition for Reconsideration.

JOHNSON, Judge.

This is an appeal from the decision of the Commissioner of Patents, acting through the Examiner-in-Chief of the Board of Appeals, 88 USPQ 48, affirming the decision of the Examiner of Trade-Mark Interferences dismissing appellant's opposition to the registration of appellee's trade-mark "Surge" for a detergent washing powder with a wetting agent added, in tablet and powder form, particularly for cleaning dairy utensils.

Appellee alleged June 20, 1947, as the date of first use of the mark on the above-mentioned product, and in commerce among the several states.

The record discloses that appellee filed its application on July 5, 1947. It was passed in due course for publication in the Official Gazette. On November 26, 1948, appellant filed a notice of opposition alleging that it is the owner of the trade-mark "Surf" which was duly registered on January 28, 1936, for a detergent compound for general washing and cleaning; that the detergent washing powder for which appellee seeks to register "Surge" is an article used for identical purposes as the detergent compound in connection with which appellant has long used "Surf" and for which "Surf" has been registered; that "Surge" so resembles "Surf," both in sound, appearance and signification, as to be likely, when applied to the goods of appellee, to cause confusion or mistake or to deceive purchasers; and that the use and registration of "Surge" by appellee stakes the reputation of appellant and its products on the goods of appellee, interferes with appellant's business and popularization and sale of its product, appropriates part of the celebrity of "Surf," which is appellant's creation and property, forestalls the legitimate future extension of appellant's trade, misleads and confuses the public, and damages appellant.

Appellee, in its answer to the notice of opposition, alleged that it and its predecessors have used the trade-mark "Surge" in the dairy field (on milker units) since 1925; that since that time it has continuously expanded the use of its mark "Surge" to other products in the dairy field; that the use of its mark "Surge" on a detergent washing powder with a wetting agent added for cleaning dairy utensils is a proper and legitimate expansion of its use of its mark; and that it is the owner of 23 registrations of the trade-mark "Surge," the first of which was issued in 1926 and the last in 1948 and most of them relating to the dairy industry.

Both parties filed stipulated evidence in lieu of testimony.

It appears from the stipulated evidence that appellee adopted the trade-mark "Surge" in January, 1925, for use on milker units or milking machines and that such use has continued; that since 1925 appellee has extended the use of its trade-mark "Surge" to its various products; that since 1925 appellee has expended in excess of $2,400,000 for advertising its "Surge" products, of which in excess of $1,000,000 was spent in advertising media restricted to farmers; that it has sold its "Surge" products at retail in an amount of over $55,000,000; that there has been no advertising directed solely to the sale of a "Surge" detergent, but that the importance of using a detergent was stressed in some of the advertising. The stipulated evidence also shows that since 1937 appellee has published a paper known as "The Surge News," which is issued four times a year and has a circulation of 400,000 which is restricted to dairy farmers and those engaged in the dairy industry; that since 1925 all of appellee's products bearing the trade-mark "Surge" have been sold to dairy farmers through appellee's dealers; that from 1925 to 1942 most, and from 1942 to 1947, all of these dealers were known as "Surge Dealers"; that these dealers delivered their "Surge" products to their customers in trucks on which the name "Surge" was prominently displayed, and their establishments also bore the name "Surge"; that from 1925 to 1935 all of appellee's milking machines were sold in packages which bore the trade-mark "Surge" and contained two pounds of a detergent, although the detergent package itself did not bear the trade-mark "Surge"; that since 1935, "many, but not all," of the packages containing a "Surge" milking machine have been provided with a detergent package; and that since about June 20, 1947 appellee has used its trade-mark "Surge" on its detergent for cleaning dairy utensils.

The stipulated evidence shows that appellant is the owner of the trade-mark "Surf," which was registered January 25, 1936, for detergent compound for general washing and cleaning; that since September, 1935, it has continuously used its trade-mark "Surf" as the name of a detergent compound adapted, advertised, and used for washing and cleaning clothes, dishes, glass-

ware, floors, windows, silverware, refrigerators, farm utensils, bathrooms, woodwork, tile, canning jars, porch furniture, walls, etc.; that since 1935 it has expended in excess of $3,000,000 to advertise "Surf," and during that time has sold more than 24,000,000 packages of its "Surf" detergent having a retail value of more than $7,000,000.

The sole issue here presented is whether the marks, when applied to a detergent, would cause confusion or mistake or deceive purchasers.

From the above it will be noted that appellant is the owner of the trade-mark "Surf" and has used it on a detergent compound since 1935; that appellee is the owner of the trade-mark "Surge" for various articles and has used its mark "Surge" since 1925. Both parties have expended large sums in advertising their products and have sold large quantities of their merchandise.

In his decision the examiner states:

"The examiner cannot agree with the opposer, however, in its contention that the marks 'Surf' and 'Surge' are confusingly similar as applied to detergents, and that for that reason applicant is not entitled to the registration here applied for. Nor is the examiner persuaded that the marks 'Surf' and 'Surge' as here used 'are very similar in appearance and sound' and 'also closely related in signification'. On the contrary, it seems to the examiner that, as words of the English language, they convey different meanings to the ordinary purchaser, and that the very fact that such different meanings are suggested by these words would eliminate to a large extent any confusion caused by the similarity in sound or appearance of the first three letters of these words. According to Webster's New International Dictionary (Unabridged, G. & C. Merriam Company, 2nd Edition), the word 'surf' has the following meaning:

"Surf (formerly *suffe,* of unknown origin).

n. The swell of the sea which breaks upon the shore, as upon a sloping beach; also, the breaking waves, or their foam, splash and sound."

On the other hand, "surge" has at least six different meanings, as follows:

"Surge (from L. *surgere, surrectum* —to raise, to rise; fr. *subs* for *sub* under / *regere*—to direct, probably thru F.; cf. O. F. *sourgeon* fountain, F. *surgeon* sprout, sucker, and E. surge, v.).

"n. 1. A spring, a fountain, a source. (obs.)

"2. A large wave or billow, a great rolling swell of water; also such swells or billows collectively.

"3. A swelling, rolling or sweeping forward like that of an oncoming billow or series of billows; onward rush; a violent rising and falling, as a surge of tone, or of emotion; the *surge* of the hills.

"4. (Elec.) a transient and abnormal rush of current in a circuit. Cf. Transient current.

"5. (Meteor.) A barometric wave apparently independent of, and unexplained by, existing barometric gradients.

"6. (Naut.) a.) A surging or slackening of a rope or cable; also, a jerk caused by such. b.) The tapered part of a windlass barrel or a capstan, on which the cable surges.

"Only the second of these suggests a similar association to the definition given under 'surf'. In everyday language, it is believed the word 'surge' more commonly suggests any type of swelling or rolling, be it of water or any other element. If this difference in meaning is considered in conjunction with the undisputed history of the applicant and its uninterrupted use of the trade-mark 'Surge' for a great many dairy industry products, the conclusion seems justified that no likelihood of confusion will result if applicant be now permitted to extend the use of its mark to detergents and register it for such products. This con-

clusion is fortified by the stipulated fact that during a number of years past applicant has included a detergent in its various dairy machinery products, although the detergent as such was not identified by the trade-mark 'Surge', while the machine itself was so identified. * * *"

In his decision the examiner-in-chief states:

"The terms 'surf' and 'surge' are simple, well-known words easily distinguished in pronunciation and *ordinary* connotation by the average person. The final letters 'f' and 'ge' of the two words are distinctively different both in sound and appearance and I do not find such similarity between the words *as a whole* as would be likely to lead to confusion.

"In regard to the question of the contended similarity or dissimilarity, as the case may be, between the meanings of the two words 'surf' and 'surge,' whether or not they have a single meaning in common or whatever their mutual significance, this factor is not considered controlling since appearance and sound are of equal importance which, in this case, outweigh any actual significance which purchasers might attach to the meaning of the two words as applied to a detergent. Kroger Grocery & Baking Co. v. Blue Earth Canning Co., 88 F.2d 725, 24 C.C.P.A., Patents, 1098. Despite what dictionary definitions may be seized upon to show that the words do or do not mean the same thing, it is my view that likelihood of confusion as to source of origin of the goods would not be likely to arise because of this factor." [Italics added.]

We are in agreement with the reasoning of the examiner of interferences and the examiner-in-chief as set out in the above-quoted excerpts from their opinions. We think the words "Surge" and "Surf" considered in their *entireties* do not look alike or sound alike. While the first three letters of each word are alike, there is quite a difference between the final letters "f" and "ge," so much so as to make the words

as a whole distinctively different in sound, pronunciation, and appearance. Moreover, we think, as pointed out by the examiner in his opinion, that the two words do not ordinarily have the same significance or connotation, notwithstanding that one of the six dictionary definitions of the word "surge" is similar to the definition of the word "surf."

■■ In the last analysis, the similarity of marks must be determined largely as a matter of opinion. United-Carr Fastener Corporation v. Capewell Manufacturing Company, 189 F.2d 1000, 38 C.C.P.A., Patents, 1153, and cases cited therein. It is our opinion that the marks here involved, when viewed as a *whole*, are not so similar that their concurrent use on detergents would cause confusion or mistake or deceive purchasers.

The decision of the commissioner is therefore *affirmed*.

1. May 28, 1952, we issued a written opinion in this case affirming the decision of the examiner-in-chief sustaining the decision of the examiner of interferences dismissing appellant's opposition to registration of appellee's mark. In conformity with our practice, the decision was withheld from formal publication pending the exercise of appellant's right to petition for reconsideration.

Appellant filed a petition for reconsideration calling our attention to certain misstatements of the stipulated evidence in that opinion.

We have reconsidered the case and have concluded that the misstatements of fact in our original opinion are immaterial to a decision of this case since, as we stated in the original opinon, "The sole issue here presented is whether the marks, when applied to a detergent, would cause confusion or mistake or deceive purchasers." The stipulated evidence was set out merely to show the factual history of the marks of the parties.

In the foregoing opinion we have corrected the misstatements of the evidence called to our attention by appellant. In view of the fact that we regard those misstatements as immaterial to the decision of this case,.

we adhere to our decision in our original opinion. Our orignal opinon is withdrawn, and this opinion is presented in lieu thereof.

Affirmed.

WORLEY, J., dissents.

JACKSON, J., sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with Section 294 (c, d), Title 28 U.S.C., to participate in the decision and did so.

O'CONNELL, Judge (dissenting).

The merchandise for which appellee seeks to register "Surge" consists of a detergent washing powder used, among other things, for cleaning farm utensils. It is identical with merchandise for which appellant has previously used the registered mark "Surf" for almost twelve years.

The goods of both of the parties are put up in small packages and marketed at a low price to the same class of purchasers for identical purposes. Each of the contested marks is printed in boldface type. Both words are dictionary terms in common use but neither is descriptive of the goods to which it is attached.

The following pertinent observations are quoted from appellant's brief:

"That 'Surge' and 'Surf' are in fact very closely related in signification is evident from dictionary definitions. 'Surf' is defined in the New Standard Dictionary [1931] as 'The swell of the sea, that breaks upon a shore; the disturbed and surging condition of water where it meets the land.'

"In the same dictionary 'Surge' is defined as 'A large swelling wave or mass of waves; a great rolling volume of water; billow; sometimes used collectively and often figuratively; as, a coast beaten by the *surge* * * *.' The definitions make plain that the words describe the same things and bring to mind the same associations."

In support of the contention that the marks so nearly resemble each other in sound and appearance that, considered as a whole, they are likely to cause confusion when concurrently used on identical merchandise, appellant asserts that "Surge" and "Surf" are each words of one syllable which start with the same three letters, "Sur," thus forming the identical and dominating part of the two short words which cannot be otherwise than very much alike in sound and appearance.

On the arguable distinction due to the final "f" and "ge," respectively, appellant correctly urges that the difference in appearance and pronunciation of the two words is so comparatively slight that the purchasing public would nowise retain the recollection thereof, particularly since both words are practically identical in significance. Confusing similarity of competing trade-marks attached to identical goods does not depend on the use of identical words; it is sufficient if the trademark is so like another in form, spelling, or sound that one, with no clear or definite recollection as to the real trade-mark, is likely to become confused or misled as to the origin of the goods. Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774.

The interests of the buying public in their reliance upon brand names or marks must also be taken into consideration. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381, rehearing denied, 316 U.S. 712, 62 S.Ct. 1287, 86 L.Ed. 1777; Sunbeam Furniture Corp. v. Sunbeam Corp, 9 Cir., 191 F.2d 141.

It is my opinion that in the case at bar the marks are obviously confusingly similar and the applicant from the outset of the use of "Surge" for a detergent, beginning as late as June 20, 1947, has been in a position to benefit by appellant's extensive advertising, if it has not virtually done so, with respect to the mark "Surf."

The tribunals of the Patent Office in reaching their final conclusion that no confusion would likely result from the concurrent use of the marks on identical goods relied on the alleged fact that because appellee's detergent has been sold in the past to dairy farmers through applicant's

dealers, such dealers are to constitute the only channel of distribution for the goods in the future, and the sale thereof is to be restricted solely to dairy farmers. There is no merit whatever in that proposition.

In the first place there is no evidence of record that such dealers have not also sold and delivered appellant's "Surf" to dairy farmers who have used appellee's milking machines and other mechanical equipment. Secondly, appellee is nowise restricted to sell its goods exclusively to dairy farmers nor to maintain its present trade practices. Celanese Corp. of America v. E. I. DuPont De Nemours & Co., 154 F.2d 143, 33 C.C. P.A., Patents, 857. Nor is there any evidence that appellee at will may not or will not wholly dispose of its subsidiary organization and the trade-mark "Surge" with which that business is identified.

For the reasons hereinbefore stated, the decision of the Acting Commissioner of Patents should be reversed.