51 CCPA

**LEVER BROTHERS COMPANY,**
Appellant,

v.

**The WINZER COMPANY OF DALLAS,**
Inc., Assignee of the Winzer Company, Appellee.

**Patent Appeal No. 7068.**

United States Court of Customs
and Patent Appeals.
Jan. 23, 1964.

Mark N. Donohue, New York City (Brumbaugh, Free, Graves & Donohue, New York City, of counsel), for appellant.

John M. Rommel, Rommel, Allwine & Rommel, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

The Trademark Trial and Appeal Board dismissed appellant's, Lever Brothers Company's, opposition to the registration by appellee (Winzer) of the mark "VIE" for a liquid detergent for dishwashing, sold for domestic use.[1] (134 USPQ 589.) Opposer is registrant of the mark "VIM" for a preparation in powder form for polishing, scouring, and cleaning purposes;[2] a cleaning, polishing, or scouring preparation in powder form;[3] and, in addition to the goods listed immediately above, a detergent for general washing and cleansing.[4]

The present appeal raises the single issue as to the correctness of the board's holding.

Evidence adduced by appellant establishes that:

(1) Appellant has continuously used the trademark VIM to identify household cleansing products since prior to March 1905—a period of over fifty-seven years.

(2) Appellant has used the trademark VIM continuously since 1953 to identify household laundry detergents, first in powder form and more recently in pellet form.

(3) Appellant's VIM products are distributed and sold and advertised on a nation-wide basis.

(4) Appellant, in 1961, appropriated approximately $4,000,000, and in the twenty-five years preceding 1961 expended over $1,200,000, for advertising its VIM products.

The Trademark Trial and Appeal Board said:

"While there are certain differences in the products of the parties they are both detergent preparations for household purposes, and there could be no doubt but that purchasers thereof would attribute them to a common origin were they to be sold under the same or similar marks."

Assuming *confusing* similarity of the marks was referred to, we agree.

We also agree with the board that:

"Although the marks 'VIE' and 'VIM' differ only in their final letters, they are nevertheless everyday words with well understood and specifically different meanings. Additionally, regardless of the fact that applicant's mark is susceptible of more than one pronunciation, it could not in any event be pronounced to sound like opposer's mark. Under the circumstances, it is concluded that confusion, mistake or deception of purchasers is not reasonably likely to occur. Cf. Lever Brothers Company v. Babson Bros. Co. [39 CCPA 1021, 197 F.2d 531], 94 USPQ 161 (CCPA, 1952); and Campana Corporation v. Willats, 73 USPQ 531 (Comr., 1947)."

Appellant, while admitting the relevancy of the differences relied on by the

1. Ser. No. 87,163, filed Dec. 11, 1959.

2. Reg. No. 44,294, issued Mar. 7, 1905, re-renewed.

3. Reg. No. 60,261, issued Feb. 5, 1907, re-renewed.

4. Reg. No. 605,256, issued Apr. 26, 1955.

Trademark Trial and Appeal Board to distinguish the marks in issue, argues in its brief that:

"*  *  * More compelling, however, is the overall appearance of the mark, evaluated in the light of what is likely to happen in the market place where the two marks are intended to function as indicia of origin of the products on which they are used. This is a basic and fundamental consideration to any proper determination of the issue of likelihood of confusion."

We agree fully with appellant's further statement:

"Determination of the issue of likelihood of confusion growing out of Appellant's use of VIM on household laundry detergents and Appellee's use of VIE on dishwashing detergents for home use requires an evaluation of the marks in issue in the environment in which these marks would be encountered on the products of the respective parties in their usual markets by the prospective purchasing public. See Star Watch Case Co. v. [Gebruder] Junghans, A.G. (C.C.P.A.1959) 267 F.2d 950, 46 C.C.P.A: 929; Avon Shoe Co., Inc. et al. v. David Crystal, Inc. et al. (S.D.N.Y.1959) 171 F.Supp. 293, 121 USPQ 397."

The probable commercial environment in which the average purchaser will encounter the marks in issue has been described in appellant's brief, from which we note that:

(1) The products of both parties to this proceeding are staple, low-price articles of the type normally sold through grocery channels, including what are now commonly referred to as grocery chain or supermarket stores.

(2) Appellant's VIM laundry detergent is widely advertised. There is no evidence of advertising of appellee's VIE dishwashing detergent.

(3) In any grocery store, large numbers of similar products of different manufacturers are placed on row after row of shelves for display to prospective purchasers. The purchasing public normally picks and chooses the desired products from the shelf displays.

Admittedly, such an environment is a difficult environment for discrimination in the making of purchases. We do not agree, however, with appellant, that:

"Purchasers of the respective products of the parties here do not and will not have the opportunity to simultaneously ·compare the two marks in issue nor to meditate as to possible differences in the meaning of the words comprising the marks. They are obliged to recall one or the other of these marks separately, at different times and under circumstances that make avoidance of error most difficult."

There are two relevant observations upon which we base our disagreement with this statement. First, the very nature of supermarket displays is conducive to the side-by-side or adjacent display of competing products and thus actually affords an unique opportunity for the purchaser to simultaneously compare the marks used thereon. Second, the existence of so many competing products, coupled with the veritable barrage of advertising to which the prospective purchaser is continually subjected creates an awareness of real or fancied differences in products associated with particular marks, so that despite the undoubted differences in literacy, intelligence and education of the purchasers of such products, they approach the selection and purchase of such goods with at least some psychological conditioning, hopefully directed by the producer's advertising.

We think these factors additionally support the board's conclusion that the marks in issue are not likely to cause purchaser confusion, mistake or deception. We think there is a strong probability that opposer's active merchandising and advertising campaign has cre-

**820**

ated such an awareness of its "VIM" products that a prospective purchaser would not be likely to associate applicant's "VIE" products with opposer or to confuse similar products marketed under the marks in issue. Instead, it seems to us that the differences in sound and probable psychological impact of the marks (whether or not the prospective purchaser recognizes semantic differences in the words per se), together with the opportunity which the environment of the market place provides to compare the goods and marks simultaneously and with a minimum of reliance on recall,[5] are all factors which support the action of the Trademark Trial and Appeal Board.

The decision of the board is affirmed.

Affirmed.

5. While here we necessarily must speculate on the existence of these factors, proofs in an action for unfair competition might well contradict them and warrant relief in such an action. Our speculative observations, however, would appear to have the same standing as do the equally speculative observations upon which appellant bases its argument.