## MISHAWAKA RUBBER & WOOLEN MANUFAC-TURING CO. *v.* S. S. KRESGE CO.

No. 649.   Argued April 1, 1942.—Decided May 4, 1942.

*Mr. George L. Wilkinson,* with whom *Mr. Eugene M. Giles* was on the brief, for petitioner.

*Mr. William B. Giles* for respondent.

*Messrs. Milton Handler* and *Arthur T. Vanderbilt* filed a brief on behalf of the Pepsi-Cola Company, as *amicus curiae.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The petitioner, which manufactures and sells shoes and rubber heels, employs a trade-mark, registered under the Trade-Mark Act of 1905, 33 Stat. 724, 15 U. S. C. § 81 *et seq.,* consisting of a red circular plug embedded in the center of a heel.   The heels were not sold separately, but were attached to shoes made by the petitioner.   It has spent considerable sums of money in seeking to gain the

favor of the consuming public by promoting the mark as assurance of a desirable product. The respondent sold heels not made by the petitioner but bearing a mark described by the District Court as "a circular plug of red or reddish color so closely resembling that of the plaintiff [petitioner] that it is difficult to distinguish the products sold by the defendant from the plaintiff's products." The heels sold by the respondent were inferior in quality to those made by the petitioner, and "this tended to destroy the good will created by the plaintiff in the manufacture of its superior product." Although there was no evidence that particular purchasers were actually deceived into believing that the heels sold by the respondent were manufactured by the petitioner, the District Court found that there was a "reasonable likelihood" that some purchases might have been induced by the purchaser's belief that he was obtaining the petitioner's product. "The ordinary purchaser, having become familiar with the plaintiff's trade-mark, would naturally be led to believe that the heels marketed by the defendant were the product of the plaintiff company." Concluding that the petitioner's mark had thus been infringed, the court enjoined future infringement and also ordered that the respondent account to the petitioner for profits made from sales "to purchasers who were induced to buy because they believed the heels to be those of plaintiff and which sales plaintiff would otherwise have made."

Complaining of this criterion for determining the profits that improperly accrued to the respondent by reason of the infringement, the petitioner appealed to the Circuit Court of Appeals for the Sixth Circuit, which affirmed the decree. 119 F. 2d 316. Deeming the matter to present an important question under the Trade-Mark Act, we brought the case here solely to review the provisions of the decree dealing with the measure of profits and

damages for the infringement found by the two lower courts. Whether there was such an infringement as to entitle the petitioner to the remedies provided by the federal trade-mark laws is therefore not open here.

The protection of trade-marks is the law's recognition of the psychological function of symbols. If it is true that we live by symbols, it is no less true that we purchase goods by them. A trade-mark is a merchandising short-cut which induces a purchaser to select what he wants, or what he has been led to believe he wants. The owner of a mark exploits this human propensity by making every effort to impregnate the atmosphere of the market with the drawing power of a congenial symbol. Whatever the means employed, the aim is the same—to convey through the mark, in the minds of potential customers, the desirability of the commodity upon which it appears. Once this is attained, the trade-mark owner has something of value. If another poaches upon the commercial magnetism of the symbol he has created, the owner can obtain legal redress. And in this case we are called upon to ascertain the extent of the redress afforded for infringement of a mark registered under the Trade-Mark Act of 1905.

The "right to be protected against an unwarranted use of the registered mark has been made a statutory right" by that Act. *Thaddeus Davids Co.* v. *Davids Mfg. Co.*, 233 U. S. 461, 471. Section 19 of the Act provides that "upon a decree being rendered in any such case for wrongful use of a trade-mark the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby, and the court shall assess the same or cause the same to be assessed under its direction . . .; and in assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must

prove all elements of cost which are claimed."[1]  33 Stat. 724, 729; 15 U. S. C. § 99.  Infringement and damage having been found, the Act requires the trade-mark owner to prove only the sales of articles bearing the infringing mark.  Although the award of profits is designed to make the plaintiff whole for losses which the infringer has caused by taking what did not belong to him, Congress did not put upon the despoiled the burden—as often as not impossible to sustain—of showing that but for the defendant's unlawful use of the mark, particular customers would have purchased the plaintiff's goods.

If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher.  The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark.  Cf. *Straus* v. *Notaseme Co.*, 240 U. S. 179, 183; compare *Sheldon* v. *Metro-Goldwyn Corp.*, 309 U. S. 390; *Westinghouse Electric Co.* v. *Wagner Mfg. Co.*, 225 U. S. 604.  The burden is the infringer's to prove that

---

[1] The committee reports upon the bill which became the 1905 Act make these observations on § 19: "By section 19 provision is made for proceedings in equity against the infringer of a registered trademark.  This section corresponds in terms with section 4921 of the Revised Statutes relating to patent cases, except that it specially provides the manner in which profits shall be ascertained.  Under existing rules it is necessary for the complainant to prove sales and costs with entire and absolute accuracy.  The only persons having knowledge of the cost of making the sales are the defendant or some one in his employ.  It has seemed, therefore, only fair and just that if the complainant proves the sales, the defendant should be required to produce evidence of the expenses he was put to in making such sales as an offset against the sales proven by the complainant."  Sen. Rep. No. 3278, 58th Cong., 3d Sess., p. 10; H. Rep. No. 3147, 58th Cong., 3d Sess., p. 9.

his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. *Hamilton-Brown Shoe Co.* v. *Wolf Bros.*, 240 U. S. 251. There may well be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer. In the absence of his proving the contrary, it promotes honesty and comports with experience to assume that the wrongdoer who makes profits from the sales of goods bearing a mark belonging to another was enabled to do so because he was drawing upon the good will generated by that mark. And one who makes profits derived from the unlawful appropriation of a mark belonging to another cannot relieve himself of his obligation to restore the profits to their rightful owner merely by showing that the latter did not choose to use the mark in the particular manner employed by the wrongdoer.

The starting point of the case before us is respondent's infringement of the petitioner's trade-mark in violation of the federal Act. The decree is assailed by the petitioner because, upon its reading of the decree, it is awarded only those profits which it can affirmatively prove to have resulted from sales "to purchasers who were induced to buy because they believed the heels to be those of plaintiff, and which sales plaintiff would otherwise have made." We are not prepared to say that such is not a sensible reading of the language in which the decree was cast, the purpose of which was to recover profits that came to the respondent through its infringement and that in good conscience belong to the petitioner. The decree in effect requires the petitioner to prove by a procession of witnesses, that when they bought heels from the infringer they had a clear, well-focussed consciousness that they were buying the petitioner's heels and that otherwise they

would not have bought them. But the shoe is on the other foot. The creation of a market through an established symbol implies that people float on a psychological current engendered by the various advertising devices which give a trade-mark its potency. It is that which the Trade-Mark Act of 1905 protects. We therefore vacate the decree in order that the cause be remanded to the District Court for the entry of a decree in conformity with this opinion. If the petitioner suffered damages beyond the loss of profits the decree should provide for the assessment of such damages.

*Reversed.*

The CHIEF JUSTICE and MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, dissenting, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY concur:

Mishawaka does not sell detached rubber heels. The heels bearing its mark are attached to the rubber boots and shoes it manufactures, and reach the market only as parts of these larger products. Kresge, on the other hand, sells in its retail stores detached rubber heels manufactured by others. Hence, like the courts below, I find it difficult to conclude that there were substantial probabilities of deception and that Kresge's sales took away business that might otherwise have gone to Mishawaka. In any event, the economic rivalry, if it existed at all, was so remote and indirect that an injunction alone would seem to have afforded ample relief against the infringement, found by both courts below to have been without fraudulent intent.

Moreover, upon the extensive evidence introduced by both parties, the trial court concluded that there was "no direct proof of any ordinary purchaser being misled into believing that heels marketed by the defendant were prod-

ucts of the plaintiff company." The Circuit Court of Appeals reached a similar conclusion: "No justification is found in the record for an inference that any one appears to have been deceived by appellee's trade-mark into purchasing its shoe heels and lifts in the belief that he was purchasing shoe heels produced by appellant." 119 F. 2d 316, 324.

If the respondent had wilfully palmed off the heels it sold as products of the petitioner, and if it had been shown that the petitioner had suffered any injury, I should agree to a decision resolving doubts about the measure of damages in favor of the petitioner. But under the circumstances of this case, I believe the effect of the decision handed down is to grant a windfall to the petitioner and to impose a penalty upon the respondent, neither of which is deserved. Finding nothing in the Trade-Mark Act of 1905 which compels such a result, I can see no abuse of discretion in the decree of the trial court which the Circuit Court of Appeals affirmed. *Saxlehner* v. *Siegel-Cooper Co.,* 179 U. S. 42. Cf. *Straus* v. *Notaseme Co.,* 240 U. S. 179, 182–183.