SUCRS. DE JOSÉ FERNÁNDEZ, *S. en C.*, Plaintiff and Appellee, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 8406.   Argued June 23, 1942.—Decided July 31, 1942.

*George A. Malcolm, Attorney General,* and *G. Benítez Gautier, Assistant Attorney General,* for appellant.   *E. Martínez Rivera* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

This is an appeal from an order of the District Court of San Juan granting a preliminary injunction against the appellant, the Treasurer of Puerto Rico. The injunction restrained the Treasurer from interfering with the sale of "Palo Rico" rum in the market of Puerto Rico by the appellee.

The essential facts in this case are not in dispute. The appellee, José Fernández, *S. en C.*, is engaged in the manufacture and distribution of distilled spirits in Puerto Rico. In September 1940, the appellee began taking steps to introduce a new rum, Palo Rico, into the market of Puerto Rico. During that month it ordered labels to be printed for Palo Rico rum. On September 20, 1940, it obtained, as required by Federal Law and regulations, a certificate of approval of the said label from the Federal Alcohol Administration. The same label, with a minor variation, was likewise approved by the Federal Alcohol Administration on December 7, 1940. An advertising campaign for this new brand of rum, by means of radio, newspaper, and personal contact, was launched by the Fernández firm in September. Bottles, allegedly especially made for Palo Rico rum, were purchased, costing $5,000.00, and caps for those bottles, also especially made, were ordered, costing $1,000.00. On December 10, 1940, an application was duly filed with the Executive Secretary of Puerto Rico by the Fernández firm for the registration of the trade-mark "Palo Rico" for rum. No other person had registered a similar trade-mark prior to that date. All internal revenue taxes had been paid, and the proper stamps affixed to the caps of the bottles.

On December 7 Palo Rico rum was for the first time actually placed on the market by the Fernández firm. On December 3 it had written the Treasury Department asking for approval of its use of the aforesaid "Palo Rico" label. The letter was marked in the Treasury Department as arriving

9 : 30 A. M., December 3. A letter written by Ordóñez & Hno., another liquor firm, asking for approval of a label also bearing the name Palo Rico rum, was marked as reaching the Treasury Department 9 : 00 A. M. the same day, December 3. On December 5 the Treasury wrote the Ordóñez firm rejecting their request for approval of the said label on the ground that "another rectifier" had already presented the same label for approval. On December 5 Ordóñez & Hno. asked for a reconsideration of that decision. On December 14 the Treasurer wrote a letter to the Ordóñez firm, certifying approval of their label, and on the same day wrote a letter to the Fernández firm returning its label unapproved, on the ground that the same label had already been approved for use by Ordóñez & Hno.

On December 17, 1940, the appellee therefore filed the petition for injunction herein, alleging that the Treasurer had given verbal instructions to his Internal Revenue agents to prevent the sale in Puerto Rico of rum by the appellee with the label "Palo Rico" attached thereto. The appellee estimated the value of this trade-mark at $25,000.00. The appellant admitted in his answer his intention to prevent the sale of Palo Rico rum by the appellee, setting up as justification therefor the approval by him of a similar label in favor of the Ordóñez firm, and his alleged authority, pursuant to §6 (D) of Regulation 1 promulgated under the Spirits and Alcoholic Beverages Act, to prevent the use of trade-marks which would mislead the public. The Treasurer has appealed from the order of April 19, 1941, of the district court granting the injunction prayed for.

■ Act No. 6, Laws of Puerto Rico, 1936, Third Special Session (p. 44), known as the Spirits and Alcoholic Beverages Act, as amended by Act No. 149, Laws of Puerto Rico, 1937 (p. 392), provides in §40 as follows:

"Every person who in Puerto Rico manufactures or places in any container alcoholic beverages taxable under this Act, shall place

on each container a label indicating the following particulars: Exact contents of the container; alcoholic content by volume; the place where it was distilled or manufactured, and the name of the bottler or canner. If said alcoholic beverage is rum, said person shall be obliged to have appear prominently on the label the following phrase in English *Puerto Rican Rum,* in letters not less than five-sixteenths (5/16) of an inch high and of lines of one-sixteenth (1/16) of an inch or more in width, said phrase to be not less than three (3) inches long. For containers of four-fifths (4/5) of a pint and less the phrase *Puerto Rican Rum* must appear on the label in letters not less than one-eighth (1/8) of an inch high, said phrase to be not less than one and one-half (1–1/2) inches long. On the label of every alcoholic beverage shall also appear the word *distilled, rectified,* or *blended,* as the case may be, in accordance with such regulations as the Treasurer may prescribe for the purpose; *Provided, further,* That the trade mark or name of the rum must appear prominently on the label in letters of a size at least three times the size of the letters in which the name of the manufacturer, distiller, rectifier, or canner appears.''

Section 49 of the said act authorizes the Treasurer to promulgate such rules and regulations as are necessary to make the act effective. Regulation No. 1 of 1938 was issued pursuant thereto. Section 6 (C) of that Regulation provides in part as follows:

''No person shall bottle alcoholic beverages in Puerto Rico without having first obtained by application 'A certificate of approval of labels'. Any person bottling such beverages shall submit to the Bureau at last three of each kind of label which he proposes to affix to the containers of his products. Such certificate shall have attached thereto at least one each of all labels approved by the Treasurer, which shall be available for inspection of agents at all times.''

Section 6 (D) of Regulation 1 reads in part as follows:

''No label shall contain any statement, trade mark, trade name, pictures or date which may mislead or confuse the purchaser or the general public.''

The Treasurer undoubtedly was authorized to provide, as he did in §6 (C) of Regulation 1, that no person shall bottle alcoholic beverages without having previously obtained approval of the label therefor. This regulation enables the Treasurer to enforce effectively the provisions of §40 that every such label must contain certain detailed information. It should be noted, however, that representatives of the Treasury Department testified in this case that the appellee's label complied in every respect with the provisions of §40, and that the certificate provided for in §6 (C) would have been issued, except for §6 (D).

Section 6 (D) of Regulation 1 goes somewhat further. It is a little more difficult to spell out from the terms of the Spirits and Alcoholic Beverages Act an intention on the part of the Legislature to authorize a regulation apparently designed to prevent unfair competition. The Legislature, having specifically provided in §40 what information a label shall contain, it may perhaps be argued that regulations as to labels must be confined to implementation of §40, that questions of unfair competition are outside the scope of the said act, and that consequently the Treasurer was without authority to promulgate §6 (D). On the other hand, it may well be argued that the Spirits and Alcoholic Beverages Act is a statute vesting both broad and detailed powers in the Treasurer over manufacture and distribution in an industry which experience has shown requires strict regulation and over which government has wide powers (*Bacardí Corporation of America* v. *Domenech, Treasurer of Puerto Rico,* 311 U. S. 150, 167, 168). Under that theory, even in the absence of any specific statutory provision to that effect, it might conceivably be held that the general purpose and spirit of that act enabled the Treasurer to guard against unfair competition in the distribution of intoxicating liquors by promulgating and enforcing §6 (D). In any event, it is not necessary to give a final answer to that question in this case.

888

For reasons to be presently noted, we assume, without deciding, that §6 (D) of Regulation 1, is, generally speaking, valid.

██ We therefore come to the question of the application of the said regulation to this particular case. The Legislature could, of course, enact specific legislation regulating the use of trade-marks in Puerto Rico in the liquor industry, provided it was not in conflict with Federal legislation on the subject (*Puerto Rico* v. *Shell Co.*, 302 U. S. 253). But the Legislature has not undertaken to do so. Section 40 is certainly not a detailed regulation of that subject. It provides, as already noted, only that certain information shall be contained on the labels of alcoholic beverages. Yet the Legislature could not have intended that this industry, perhaps the most carefully supervised in the nation, should remain bereft of the protection afforded by our general statutory law on this subject. Nor could it have intended that the fragmentary regulation found in §40, which has no relation to the generic problem of trade-mark regulation, should stand alone on this question.

If the Treasurer had undertaken to promulgate detailed regulations for the use of trade-marks or labels in the liquor industry under the authority vested in him by §49 of the Spirits and Alcoholic Beverages Act, we would be faced here with the problem of determining if such regulations were valid, in view of Act No. 66, Laws of Puerto Rico, 1923 (p. 414), authorizing the registration of trade-marks in Puerto Rico, particularly if such Treasury regulations conflicted in any way with the provisions of Act No. 66. But that problem does not arise here. The Treasurer has chosen simply to promulgate §6 (D), which amounts only to a broad statement of the underlying purpose of registering trade-marks. Section 6 (D) may therefore without difficulty be fitted into the framework of the said Act No. 66 of 1923, the general statute authorizing registration of trade-marks, and be read

together with it. Indeed, it seems to have been unquestioned in the *Bacardí* case that registration of labels for the manufacture and distribution of rum in Puerto Rico was properly effected by registration thereof in the Office of the Executive Secretary of Puerto Rico under the aforesaid general registration statute (311 U. S. 150 at 153, 157).

The appellee, as we have seen, endeavoured to follow the provisions of Act No. 66. That Act provides for registration of a trade-mark by the Executive Secretary of Puerto Rico (§1), upon a showing under oath that the applicant has the right to the use thereof in Puerto Rico (§2). Provision is made for notice by publication of the proposed registration, and for opposition thereto (§5). Section 6 provides that "When two or more trade-marks are pending registration and there is conflict between them because of resemblance, the Executive Secretary of Porto Rico shall decide which of such trade-marks is entitled to registration, his decision to be based on priority of use of such trade-marks, a fact which must be proved to him satisfactorily." Section 12 provides "That the registration of a trade-mark under the provisions of this Act shall be *prima facie* evidence of ownership."

The method whereby the Treasury Department purported to approve the use of the label in question by the Ordóñez firm is disclosed by the following testimony of the Chief of the Bureau of Alcoholic Beverages:

"They submitted two very similar labels, almost exactly alike, and, studying the matter from different points of view, it seemed to us that we had to solve the question on the basis of which label arrived first, *not as a matter of registration of the mark because we have nothing to do with that.*" (Italics ours.)

But §6 (D) does not require that the Treasurer, without inquiring into the facts, shall approve labels for rum on the basis of priority of receipt by him of requests therefor. To

apply invariably such a crude test, in the light of (*a*) the current mercantile practice by which many preliminary steps looking to exploitation precede both the marketing of such products and the registration of their trade-marks, (*b*) the Federal law and regulation requiring approval of the Federal Alcohol Administration of such labels, and (*c*) the provisions of Act No. 66 for registration of trade-marks, would be unreasonable, arbitrary, and contrary to the entire background of trade-mark use and regulation.

The instant case is an almost perfect example of the necessity of inquiry by the Treasurer into all these phases of the situation before deciding which label would "mislead . . . the general public". The appellee exploited this trademark; it obtained the approval of the Federal Alcohol Administration for its use; it filed application with the Executive Secretary under Act No. 66 for its registration. The Ordóñez firm, on the other hand, simply beat the appellee to the desk of the Treasurer by an eyelash. Act No. 66, and, for that matter, §6 (D) of the Treasury Regulation, were intended to cover situations like the instant case, by protecting those who could show a prior property right in a trademark. The facts here, although perhaps unknown to the Treasurer at the time he decided to follow the rule of first come, first served, clearly demonstrate the necessity of inquiry into the facts and insistence on compliance with the registration provisions of Act No. 66 in order to thwart an attempt to enrich oneself at the expense of another. See Collman, He Who Reaps Where He Has Not Sown: Unjust Enrichment in the Law of Unfair Competition, 55 Harv. L. R. 595.

■ It need hardly be added that injunction was the appropriate remedy in this case. Mr. Justice Frankfurter recently used the following illuminating language in *Mishawaka Mfg. Co.* v. *Kresge Co.*, 316 U. S. 203, decided May 4, 1942, in discussing the nature of the right involved in such

a case: "The protection of trade-marks is the law's recognition of the psychological function of symbols. If it is true that we live by symbols, it is no less true that we purchase goods by them. A trade-mark is a merchandising short-cut which induces a purchaser to select what he wants, or what he has been led to believe he wants. The owner of a mark exploits this human propensity by making every effort to impregnate the atmosphere of the market with the drawing power of a congenial symbol. Whatever the means employed, the aim is the same—to convey through the mark, in the minds of potential customers, the desirability of the commodity upon which it appears. Once this is attained, the trade-mark owner has something of value. If another poaches upon the commercial magnetism of the symbol he has created, the owner can obtain legal redress." The Treasurer was preventing the appellee from exercising the valuable property right described by Mr. Justice Frankfurter. Only injunction could stay his hand.

The order of the district court granting a preliminary injunction will be affirmed.

Mr. Justice Travieso did not participate herein.