**FEATHERCOMBS, INC., Plaintiff,**

v.

**SOLO PRODUCTS CORPORATION, Defendant.**

**SOLO PRODUCTS CORPORATION, Plaintiff,**

v.

**FEATHERCOMBS, INC., Defendant.**

United States District Court
S. D. New York.
June 30, 1961.

Cooper, Dunham, Dearborn & Henninger, New York City, for Feathercombs, Inc.; John B. Cuningham and Gerald W. Griffin, New York City, of counsel.

Darby & Darby, New York City, for Solo Products Corp.; Floyd H. Crews, Harvey W. Mortimer and Howard C. Miskin, New York City, of counsel.

METZNER, District Judge.

These two cases were consolidated for trial. In the first case Feathercombs, Inc. (hereinafter referred to as "Feathercombs") seeks judgment against Solo Products Corporation (hereinafter referred to as "Solo") for infringement of Feathercombs' Patents Nos. 2,490,285 and 2,669,239. Feathercombs also seeks relief for the alleged infringement of its registered trademark "Feathercombs" and for unfair competition. Solo denies the material allegations of these claims and counterclaims for infringement of Solo's trademark "Featherlight" and for cancellation of Feathercombs' registered mark.

In the second case the parties are reversed and Solo seeks relief against Feathercombs for the alleged infringement of Solo's Patent No. 2,547,295.

Issues have been raised, although not presented specifically in the original pleading, as to cancellation of Solo's trademark registration for "Featherlight", the invalidity of Solo's patent because of prior public use, "false marking" of Solo's combs (35 U.S.C. § 292) and laches and estoppel of Solo in regard to its counterclaim that Feathercombs infringed Solo's trademark "Featherlight".

Feathercombs' Patent No. 2,490,285 was originally applied for by Roy Andrew Smith (who is president of Feathercombs) on December 10, 1945 and granted on December 6, 1949 and will be referred to as the "first Smith patent". Feathercombs' Patent No. 2,669,239 was applied for by Smith on May 2, 1951 and granted on February 16, 1954 and will be referred to as the "second Smith patent".

Solo's patent was applied for by Wendy Weeks on November 12, 1948 and was granted on April 3, 1951 and will be referred to as the Weeks patent. As can be seen, it is intermediate the first and second Smith patents.

It was stipulated upon the trial that Weeks had priority over the second Smith patent. However, there is an issue as to whether the Weeks patent anticipated the second Smith patent.

It was also stipulated that there is no question that the terms "Feathercombs" and "Featherlight" are likely to confuse. However, the question to be determined is which party first gave source significance to the mark.

A great deal of testimony was taken on the issues involved, and voluminous trial memoranda and post-trial briefs were submitted by both parties. Clearly, the question of the validity of the patents must be determined before we reach the issue of infringement. In this regard Feathercombs recognizes the problem inherent in determining validity when it states in its main brief submitted after trial that:

"The instant cases are unique in that both sides must assert for and against patents in this same old hair retainer art."

To put it more bluntly, each side seems to ignore the real teaching of the prior art as an argument to defeat the validity of its opponent's patent because that would act as a double-edged sword to defeat the validity of its own patent. This anomalous situation has given rise to involved discussions as to the character and function of the respective patents.

It is much easier to understand these combs by looking at them than by description. Counsel admitted on the trial the difficulty in the use of language to properly describe the claimed invention.

In 1928 Patent No. 1,684,362 was issued to L. T. Sawyer and is familiarly

known in the industry as the "Grip-Tooth Comb". Figures 3 and 4 of the drawings in the patent represent portions of the comb.

Sawyer Patent

 

Figure 3                                         Figure 4

This invention relates to a comb or retainer designed to be worn in the hair and so constructed as to permit it to be easily inserted in the hair and to be securely held against displacement. The teeth are constructed so that portions will yield laterally to firmly grip and hold hair inserted between adjacent teeth. The patent states in column 2, lines 61 to 65, that:

"While the comb may be made of any suitable material, I have found that pyroxylin or other similar resilient sheet material is well fitted for use in my improved retainer."

Figure 3 above represents the use of this material, which, in fact, was the way the comb was sold commercially. The hole in each tooth may be formed by slitting the tooth and bending the side portions outward or "may be formed by punching the openings in suitably shaped teeth."

"In any event, the side walls 13 of the teeth are relatively thin and quite resilient." (column 1, lines 44 to 46)

The patent goes on to state that the side walls of the adjacent teeth are substantially in engagement with each other, but when inserted in the hair the side walls yield readily, causing the teeth to assume a flattened appearance and "firmly gripping and retaining the hair".

Figure 4 above represents the same principle obtained by the use of a single piece of wire bent into the form of a tooth, with the ends of the wire inserted into the rigid top of the comb.

In 1936 Patent No. 448,562 was issued in England to Annie Coakley. Figure 2 of the drawings in the patent represents the end portion of the comb.

Coakley Patent

Figure 2

The object of this invention is to provide a device which will securely hold the hair and yet be invisible to the eye. It is of continuous wire of fine gauge, which is twisted back on itself to form the tooth of the comb, with an arch between each tooth. The twisting also provides a roughened surface for greater gripping power.

We now come to the first Smith patent. Figure 2 in the drawings of that patent represents a portion of the device.

First Smith Patent

Figure 2

The patent states that the invention relates to a hair retaining device which will conform to the curvature of the head and be invisible when set in the hair. It is made of a single strand of thin flexible wire or a plastic strand sufficiently pliable and resilient for the purpose. It is claimed that the twisted portions serve to keep the retainer firmly in the hair. In any event, the material should be pliable and flexible enough so that the retainer can bend into any plane. Although this is not mentioned in the patent, the arches at the top create the tension to keep the teeth in line.

It is absolutely impossible to distinguish the first Smith patent from the Coakley patent. Feathercombs admits the weakness of the first Smith patent, but says the patent was merely a step in the fruition of the ideas embodied in the second Smith patent. It says that Coakley was almost as close as the first Smith patent and admits that Coakley had spring arches and was capable of lateral as well as longitudinal bending or twisting.

The attempted distinctions between the Coakley patent and the first Smith patent are without foundation, and I find that the first Smith patent is invalid.

Now, as to the second Smith patent. Figure 1 in the drawings in the patent represents the form and is partially reproduced here.

Second Smith Patent

Figure 1

The invention, according to the patent, relates to an expandible hair retainer which conforms to the curve of the head, but remains invisible when in use. It refers to the first Smith patent as introducing a new idea into the hair retaining art, with its pliability depending on the fineness and flexibility of the material used. It is made of a continuous strand of wirelike material or plastic. Toothlike elements are shaped for closely aligned internal surfaces, with the bottoms pinched together and the top being an arch leading into the next tooth. The arch at the top causes a spring tensioned connection, permitting expandibility and contraction.

The use of closely aligned bow-shaped teeth goes back to Sawyer, and the use of spring arches to create tension goes back at least to Coakley. In fact, it goes back to the old-fashioned ordinary hairpin. In addition, if you look at Figure 4 of Sawyer, you will find that all the second Smith patent does is to make the multiple teeth from a single piece of wire instead of each tooth being made from a separate piece of wire. An analysis of Sawyer and Coakley clearly demonstrates that Smith did not teach anything that

reaches the standard of invention as required by the statute.

In addition, the Weeks patent anticipates the second Smith patent. It uses a continuous strand of material that can be flexed and adapted to the head as a hair retaining device. It was devised to be invisible and readily expandable and contractible. Figure 5 in the drawings of that patent represents a portion of the device.

Weeks Patent

Figure 5

Here again it is interesting to point out the problem of the litigants as indicated above. Solo says the first Smith patent is completely anticipated by Coakley. It makes no reference to this anticipation with regard to the second Smith patent. Between the first and second Smith patents came Weeks, and Solo relies on this priority of Weeks to dispose of the second Smith patent. Feathercombs does not assert anticipation of Weeks by Coakley, but asserts the invalidity of Weeks by her public prior use.

■■ The first and second Smith patents are invalid for anticipation and lack of novelty. So too is Weeks. Everything that has been said regarding Sawyer and Coakley applies to the Weeks patent. Insofar as the claim of public prior use by Weeks is concerned, it is not sustained by the record.

In passing I should point out that Smith indicates a small unresolved inconsistency. In his first patent he states that the eyelets at the ends of the teeth tend to receive the strands of hair in them and this is supposed to be a good thing. In his second patent he states that he pinches the ends together in order to avoid catching the strands of hair, which, inferentially, is bad. Yet thereafter Feathercombs manufactures, under his second patent, a device with the ends of the teeth open. (Exhibit 35).

We come now to the charge of trademark infringement and unfair competition. For over 25 years Solo has been manufacturing a line of hair accessories for women, such as curlers, wavers, bob pins, combs and nets. Each year it has circulated a catalogue to the trade showing its line of products. The covering page of some of these catalogues exhibited a circle with a black background, on which the following words appeared in white letters: "Solo America's Finest Hair Accessories". The word "Solo" was in large bold letters on a line by itself and the remaining words were on two lines in smaller letters. In other catalogues the wording in the circle was similar in nature, with the word "Solo" featured in large block letters.

One of the items advertised in the catalogues from 1938 to 1957 was a hair roller that was displayed on a card with the legend "Solo" in large block letters. On the second line was the word "Featherlight" in small block letters, and on the third line, the words "Hair Roller" in block letters of a size intermediate the word "Solo" and the word "Featherlight". The wording used in connection with the hair roller was akin to the wording used on other items in the catalogues, such as "Solo Grip-Tite Tuck Combs", "Solo Sleep Easy Curlers", "Solo Comfy Curlers", "Solo Roller Comb" and "Solo Wave Clips".

Solo also advertised combs with various ornamental tops, such as a bow, a feather, rings or a crown. These designations, however, were only used with the style number for ordering purposes by the retailer.

In 1953 Feathercombs came out with its expandable hair retaining comb, which it merchandised under the trademark "Feathercombs", appearing in script as one word. Registration of this mark on the principal register was granted on January 1st, 1957.

Solo's expandible hair comb was first manufactured in early 1957 and called the "Featherlight Comb". Solo applied for registration of the word "Featherlight" and on March 10, 1959 registration was allowed only on the supplemental register, which permits the use of descriptive terminology. The registration showed "Featherlight" in block letters.

Solo did not use the word "Featherlight" in conjunction with other items in its catalogues until the 1958 issue. In that year the "Solo Grip-Tite Tuck Comb" became the "Featherlight Tuck Comb" and the "Solo Pony Tail Round Comb" became the "Featherlight Pony Tail Round Comb". In both instances "Featherlight" appeared in script. "Solo Wave Clips" were advertised in the catalogues of 1952 and 1953, although there was submitted as an exhibit wave clips displayed on a card and designated as "Featherlight Wave Clips" with the word "Featherlight" in script. I assume that these "Featherlight Wave Clips" came after 1957, as was the case with the "Featherlight Tuck Comb" and the "Featherlight Pony Tail Round Comb".

In addition to marketing an expandible comb of the same design and purpose as Feathercombs, Solo's packaging and display material for these combs was strikingly similar to that of Feathercombs. Feathercombs affixed its comb to a white card which had the word "Feathercombs" in black script on the face thereof. Solo affixed its comb to a white card which had the words "Featherlight Combs" in large black script on the face thereof, without "Solo" appearing on its face. Some exhibits indicated the words in large block letters.

The Feathercombs counter display had photographs of women inserting the comb for various hair styles, with the legend reading "Style your own hair just the way you want . . . securely . . . with fabulous invisible Feathercombs" and the word "Feathercombs" being in script. These photographs appeared on top of a box containing various sizes of the combs on white cards.

Solo's counter display also had photographs of women inserting the comb to achieve various hair styles. The copy read "Shapes the newest hair-dos. Holds hair securely in place. Solo Featherlight combs. Flexible—Invisible—Lightweight." These photographs appeared on top of a box containing various sizes of the combs on white cards.

The displays appeared side by side on the counters of retail stores.

Solo knew of the Feathercombs product in 1953 when Life magazine carried a story concerning Feathercombs. From 1954 to 1957 Feathercombs spent about half a million dollars in advertising. Solo admits that, after the publication of the article in Life, Solo received numerous inquiries regarding the comb.

■■ The parties have agreed in the pleadings and on the record that there is likelihood of confusion between the two marks. The combs in question here are similar and in the same competitive field. Feathercombs was the first user in this field. Hair rollers are not in the same competitive field as the hair retaining combs. Up to 1957 Solo used the word "Featherlight" as a descriptive term with the word "Solo" as a trademark on hair rollers, only one of the many items which it manufactured. During this period of time "Featherlight" did not acquire the secondary meaning needed to protect it as an unregistered mark. Cf. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 335, 59 S.Ct. 191, 83 L.Ed. 195.

■ Feathercombs' mark is registered on the principal register and is not descriptive. Neither is it generic within the "aspirin" type cases. Bayer Co. v. United Drug Co., D.C.S.D.N.Y.1921, 272 F. 505; DuPont Cellophane Co. v. Waxed Products Co., 2 Cir., 1936, 85 F.2d 75, certiorari denied 1936, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443; Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73. It is a valid trademark and is entitled to protection.

15 U.S.C.A. § 1057(b), § 715 of the Restatement of Torts.

 Solo's subsequent use of the term "Featherlight" infringed the valid trademark "Feathercombs". While it may be true that a purely descriptive term used descriptively cannot infringe a valid trademark, Solo can hardly argue that its post-1957 usage was descriptive. Q-Tips, Inc. v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144, 148, certiorari denied 1953, 346 U.S. 867, 74 S.Ct. 106, 98 L. Ed. 377.

It seems inescapable, based on the facts outlined above, that Solo's actions from 1957 on indicated a deliberate attempt to infringe so as to reap the benefits of Feathercombs' promotion campaign and the demand created by it.

Solo's registration of the term "Featherlight" on the supplemental register must be cancelled. The terms "Featherlight" and "Feathercombs" are deceptively similar and both manufacturers are in competing as well as related fields. 15 U.S.C.A. §§ 1052, 1094 and 1119.

Solo has also been guilty of unfair competition based on the above recited facts. The combs were similar. The packaging and display advertising were similar. Solo knew what plaintiff's product was. It dropped the use of the word "Solo", which had been so prominently displayed on its products during the prior years. The finished unit as presented to the public created confusion as to the source of the product and must be enjoined. Norwich Pharmacal Co. v. Sterling Drug, Inc., 2 Cir., 1959, 271 F.2d 569; 3 Callmann, The Law of Unfair Competition and Trade-marks, pp. 1465–1478.

Not only is Feathercombs entitled to an injunction, but it is also entitled to an accounting of damages and profits on the basis of the proof adduced at the trial. Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 1942, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381.

Feathercombs' claim for damages as an "informer" under the "false marking" statute (35 U.S.C. § 292(a)) must fail for lack of proof. The discussion of the patent question above indicates that Solo cannot be charged with an intent to deceive the public when it marked its combs as coming from the Weeks patent. Cf. Victoria Vogue, Inc. v. Valcourt, Inc., D.C.S.D.N.Y.1956, 148 F.Supp. 160, 171.

Submit findings of fact and conclusions of law in conformity with the above.