**DESERT SUBWAY, INC.,
et al., Plaintiff,**

v.

**CITY OF TEMPE, Defendant.**

**No. CIV–03–2021–PHX–ROS.**

United States District Court,
D. Arizona.

Dec. 5, 2003.

John E. Lundin, Jeffrey David Gross, Gallagher & Kennedy PA, Phoenix, AZ, for Plaintiffs.

Clifford L. Mattice, Marlene Anne Pontrelli, City Attorney's Office, Tempe, AZ, for Defendant.

### ORDER

SILVER, District Judge.

Plaintiffs Desert Subway, Inc. and R & R Foods, Inc. sought a preliminary injunction requiring the City of Tempe (the "City") to issue permits allowing them to display yellow and white "Subway" signs on their buildings, or in the alternative, enjoining the City from taking action to prevent them from displaying those signs. The Court granted the injunctive relief requested at a hearing on November 13, 2003. This is the opinion supporting the injunction.

### BACKGROUND

#### I. Facts and Procedural History

Plaintiffs are franchisees of Subway, a national sandwich shop chain. They own franchises located in two shopping centers in Tempe, one at McClintock Road and Southern Avenue ("Valley Plaza") and the other at Rural Road and Guadalupe Road ("Albertson's Plaza").

Subway has had some variation in the way its signs have been presented to the public in the past. In January 2003, to provide a platform for consistency, Subway obtained a federal registration for the mark that it most often uses for its storefront signs. This mark (the " '351 mark") consists of the word "Subway" in stylized yellow and white lettering. The registration claims color as a feature of the mark.

Subway has other federally registered trademarks. One mark (the " '350 mark") is identical in all respects to the '351 mark, but does not include color as a feature. Subway registered the '350 mark for use in newspapers and other media where color is not available. At least eight other Subway marks do not claim color. These marks, however, are either no longer used by the company or are not used on exterior signs.

In Tempe, all exterior signs in a shopping center must conform to the center's sign package, which specifies such things as the color, size, and location of signs. The owner of the shopping center creates the sign package, subject to review and approval by the Tempe Design Board (the "Board"). Individual tenants may apply to the Board for variances from the sign package.

There are a number of Subway stores in Tempe. New Subway stores have sought and gained the approval of the Board to display signs in yellow and white. Existing stores have also obtained permits from the City to erect signs using the registered yellow and white colors. Other businesses have also been granted color variances notwithstanding their sign package limitations.

The Valley Plaza and Albertson Plaza sign packages allow for red and blue colors

only. At some point before Plaintiffs purchased the Valley Plaza shop, the former owners converted its sign to yellow and white. They apparently did not realize that changes to the sign required a permit. The Subway store in Albertson's Plaza, by contrast, always had a red and blue sign.

In 2003, Plaintiffs gained the approval from each of the shopping center owners to modify the sign packages to include yellow and white. Plaintiffs applied to the Board for approval of the modified packages. The Board denied the Plaintiffs' applications on July 16, 2003. Plaintiffs appealed the decisions to the Tempe City Council. The City Council denied both appeals on August 14, 2003.

On October 20, 2003, Plaintiffs filed a Complaint against the City. [Doc. # 1.] The Complaint alleges violations of the Lanham Act as well as violations of Plaintiffs' civil rights under 42 U.S.C. § 1983. It seeks injunctive relief requiring the City to allow Plaintiffs to use the '351 mark on their exterior signs. The City filed its Answer on November 10, 2003.

Along with the Complaint, Plaintiffs filed an Application for an Order to Show Cause [Doc. # 2.] The Court construed the Application as a request for a preliminary injunction. A hearing was held on November 13, 2003 and the Court granted the requested preliminary injunctive relief. Because there are four Subway franchise locations under development in the City that will also seek to display their signs in yellow and white, the Court applied the injunction to all Subway stores in the City.

## THE CONTENTIONS

Plaintiffs argued that the City's refusal to allow them to display their yellow and white signs violates Section 1121(b) of the Lanham Act, which states that "[n]o state or … any political subdivision or agency thereof may require alteration of a registered mark[.]" (See Pls.' Mem. in Supp. of Application for Order to Show Cause at 7, [Doc. # 2].)

The City argued that it retains power under the Lanham Act to prohibit the use of a registered trademark altogether. (See Def.'s Mem. in Opp. to Application for Order to Show Cause at 15–16, [Doc. # 8].) It argued that in this case it has prohibited, rather than altered Plaintiffs' yellow and white signs. (Id.)

In addition to their Lanham Act claim, Plaintiffs also advanced a number of constitutional arguments in support of their request for a preliminary injunction, including arguments grounded in due process, equal protection, and the First Amendment. (Pls.' Mem. in Supp. of Application for Order to Show Cause at 9–21.) The Court declined to reach the constitutional issues, because it resolved Plaintiffs' request for a preliminary injunction on statutory grounds.

## DISCUSSION

### I. Jurisdiction

The Court has jurisdiction over this case under 28 U.S.C. § 1331 (federal question jurisdiction).

### II. Legal Standard

#### A. Preliminary Injunction Standard

"A preliminary injunction is appropriate where plaintiffs demonstrate 'either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [their] favor.'" Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir.2003) (en banc) (quoting Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir.2003)). "These two formulations represent two points on a sliding scale in which the required degree of irreparable

harm increases as the probability of success decreases." *Diamontiney v. Borg,* 918 F.2d 793, 795 (9th Cir.1990). "In other words, '[w]here a party can show a strong chance of success on the merits, he need only show a possibility of irreparable harm.'" *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 517 (9th Cir.1993). "Where, on the other hand, a party can show only that serious questions are raised, he must show that the balance of hardships tips sharply in his favor." *Id.*

## B. Trademark Interference

### 1. Section 1121(b)

Section 1121(b) of the Lanham Act governs Plaintiffs' claim of trademark interference. That section provides that "[n]o state ... or any political subdivision or any agency thereof may require alteration of a registered mark." 15 U.S.C. § 1121(b).

In *Blockbuster Videos, Inc. v. City of Tempe,* 141 F.3d 1295 (1998) the Ninth Circuit discussed the impact of § 1121(b) on local ordinances that require storefront signs in shopping plazas to be uniform in appearance and color. That case involved the same defendant and the same procedures at issue in this lawsuit.

In 1996, Blockbuster Videos, Inc. and Video Update, Inc. applied to the City for permits to display storefront signs that would incorporate their registered trademarks. *Id.* at 1297. Blockbuster had two registered marks. *Id.* One was a "torn ticket" with a blue background and yellow lettering. *Id.* The other was a blue awning with the words "Blockbuster Video" in yellow block letters. *Id.* Video Update's registered mark consisted of the words "Video Update" in stylized red letters.[1] *Id.*

The sign package for the shopping center in which Video Update had leased space required white letters on a turquoise background. *Id.* Video Update applied to use red letters on two of its storefront signs. *Id.* The Board allowed red letters on the sign facing the street, but required white letters for the sign inside the shopping center. *Id.*

The sign package for the shopping center in which Blockbuster had leased space required blue, red, or yellow letters. *Id.* Blockbuster applied to the Board use its blue and yellow "torn ticket" sign and to construct its awning. *Id.* The Board allowed Blockbuster Video's torn ticket sign, but disallowed the installation of its federally registered awning. *Id.* Instead the Board approved a sign with blue lettering. *Id.*

Blockbuster and Video Update unsuccessfully appealed the Board's decisions to the Tempe City Council. They then sued the City. *Id.* The district court consolidated the two cases and granted a preliminary injunction. *Id.* The Ninth Circuit affirmed in part and reversed in part.

With respect to Video Update, the Ninth Circuit found that the City's refusal to allow Video Update to display its sign in red violated § 1121(b). *Id.* at 1299. The court emphasized that while a local entity had "great leeway" in requiring conformity with aesthetic sign rules, when color is specified in a federal registration, § 1121(b) prohibits a local entity from requiring display in a different color. *Id.* This would impair the national uniformity of the mark: "If Video Update and Blockbuster are required to change their service marks to a turquoise and white sign in one shopping center and a pink and white sign in another, then there would be no uniform

---

1. The opinion does not specify whether Blockbuster or Video Update had any other regis-  tered marks.

mark for customers to identify." *Id.* at 1300.

With regard to Blockbuster, the court found that the City's refusal to grant Blockbuster a permit to construct its awning did not violate the Lanham Act. *Id.* at 1298. It held that prohibiting Blockbuster from using its blue awning registered mark was valid because it constituted a total ban, not an alteration, of that registered mark. *Id.* The court observed that a city "can deny any display of the mark," "can require that the mark be reduced in size," and "can dictate where the mark may be placed." *Id.* at 1299 n. 2. "What it cannot do," the court said, "is require alteration of the mark itself." *Id.*

## III. Analysis

### A. Likelihood of Success on the Merits

■ The resolution of Plaintiffs' Lanham Act claim turns on whether the City's actions constitute an "alteration" or "prohibition" of the yellow and white mark. Plaintiffs argued that the City required an alteration of their registered mark. (*See* Pls.' Mem. in Supp. of Application for Order to Show Cause at 7.) They argue that the facts in this case are nearly identical to those in the Video Update portion of *Blockbuster.* (*Id.*) The City permits signs of the type that Plaintiffs wish to install. Plaintiffs' registered trademark claims color as a feature of the mark. Like Video Update, Plaintiffs applied to the City for a permit to display their sign with the colors in their trademark registration. And as in the case of Video Update, the City refused to allow Plaintiffs to display their signs in the registered colors.

The City relied on the "awning" portion of *Blockbuster* and argued that it has not altered the display of the Subway's yellow and white mark, but prohibited the display of that mark altogether. (Def.'s Mem. in Opposition to Application for Order to Show Cause at 15–16.) The City pointed out that Subway has another federally registered mark (the '350 mark) that is exactly the same as the yellow and white mark but does not protect color. (*Id.*) It also pointed out that Subway has at least eight other registered marks, like its "Eat Fresh" trademark, that do not claim color. (*Id.*) It argued that Plaintiffs could display these marks in red and blue on their storefront signs without altering the marks. (*Id.*)

■ The Court finds Plaintiffs' argument persuasive, especially in light of the practical reasons for maintaining multiple trademark registrations. The City made much of the fact the '350 mark is same as the '351 mark in all respects except for color. But Subway registered the '350 mark for a restricted use in newspapers and other media where the use of color is not available. (Pls.' Reply Mem. at 4.) The other marks are either no longer used or are not used as storefront signs. (*Id.*) Businesses often maintain registrations of dated trademarks to prevent competitors from using them to capitalize on the company's good will. They also use different trademarks for different purposes. Some are used for signs. Others are used in product packaging, as in the case of Subway's "Eat Fresh" mark. If the City's position were correct, Subway would be forced to choose between protecting its yellow and white mark and protecting and maintaining its other marks. This is inconsistent with the purposes of the Lanham Act: "to protect the goodwill created by [a trademark] and to protect the ability of consumers to distinguish among competing producers." *Blockbuster,* 141 F.3d at 1299.

As the Ninth Circuit stated in *Blockbuster,* "it is unlikely that Congress intended the broad zoning exception Tempe seeks." *Id.* at 1300. "In order for a trademark to be a symbol that customers will recognize,

it must have a uniform appearance, not only in design, but in color." *Id.* If the City could require Plaintiffs to change their yellow and white signs to red and blue, "then there would be no uniform mark for customers to identify." *Id.* This would conflict with the plain language of 15 U.S.C. § 1121(b) and the purpose of the Lanham Act. *Id.* The Court finds that Plaintiffs have established a likelihood of success on the merits.

## B. Irreparable Harm

 Plaintiffs have also shown a possibility of irreparable harm. The primary characteristic of a franchise is the license given to the franchisee to trade upon the franchisor's goodwill during the course of the franchise relationship. *See. e.g., Scott v. Snelling and Snelling, Inc.,* 732 F.Supp. 1034, 1041 (N.D.Cal.1990); *Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.,* 834 F.Supp. 683, 691 (D.N.J.1993); *Liberty Sales Assocs., Inc. v. Dow Corning Corp.,* 816 F.Supp. 1004, 1010 (D.N.J.1993). Trademarks generate a large part of this goodwill. They signify association with the franchisor and serve as a symbol of brand recognition. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 205, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942) ("Whatever the means employed, the aim is the same—to convey through the mark, in the minds of potential customers, the desirability of the commodity on which it appears. Once this is attained, the trade-mark owner has something of value.")

The evidence demonstrated that Subway's registered marks are among Plaintiffs' most valuable assets. If Plaintiffs cannot display Subway's yellow and white signs on their stores, they stand to lose some of the goodwill associated with their nationally-known franchisor. This loss of goodwill would be difficult to valuate and might not be remedied by a damage award. Plaintiffs have therefore made the requisite showing of irreparable harm. *See Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 602 (9th Cir.1991) (intangible injuries, such as damage to goodwill, qualify as irreparable harm).

## CONCLUSION

Because Plaintiffs demonstrated a likelihood of success on the merits and the possibility of irreparable harm, the Court granted the injunctive relief requested.

Accordingly,

**IT IS ORDERED** that, pending further order of this Court, the City and its attorneys, officers, agents, servants, employees, administrators, commissioners, agencies, boards, and all persons in active concert or participation with them, are restrained and enjoined from taking any action to require licensees or users of a registered trademark used in connection with a Subway restaurant to alter the color of any exterior sign that conforms to colors claimed as a feature of such registered trademark, and are ordered to permit the display of exterior signs that conform to colors claimed as a feature of such registered trademark.