NEWMAN, Circuit Judge,
dissenting.
I respectfully dissent. The role of the trademark is to identify the source and thus the quality of goods in trade, thereby serving the public interest as well as the private interests of commerce. Yet the panel majority denies this role to the Bayer trademark ASPIRINA, apparently because the mark is similar to a generic word in the United States. That is not the criterion that determines trademark status. The correct criterion is whether, as to the specific mark ASPIRINA, it serves to associate the goods with their source, such that Bayer and the public are entitled to the safeguards and charged with the burdens of trademark recognition.
It is undisputed that ASPIRINA has been used as a trademark for more than a hundred years, and is registered to Bayer in thirty-four countries. For example, the mark ASPIRINA was registered in Mexico in 1908. The PTO in denying registration took pains to qualify that it is not holding that ASPIRINA is a common or generic word; instead the PTO held that ASPIRINA is “merely descriptive.” Descriptive terms are not excluded from trademark status, although they must meet a higher burden. See 1 McCarthy on Trademarks and Unfair Competition *971 § 4:6 (4th ed.2007) (“descriptive terms with secondary meaning are, indeed, deserving of the label ‘trademark’ ”).
It is not disputed that ASPIRINA is a coined word that was created for trademark purposes, and has no other origin. The record shows no usage of ASPIRINA, in any country including the United States, other than as a trademark in association with a product provided by Bayer. The panel majority recognizes this significant fact, acknowledging that “[a]ll three dictionary definitions submitted by Bayer indicate that ASPIRINA is recognized as a registered mark somewhere in the world, supporting Bayer’s assertion that the relevant purchasing public would perceive AS-PIRINA as a trademark.” Maj. op. at 966. The Diccionario de la Lengua Española, Vigesimal Segundo Edition (2001), the official Spanish language dictionary published by the Real Academia Española, contains the following definition:
aspirina. (Del al. Aspirin, marca reg.) F. Med. Sólido blanco, cristalino, consti-tuido por ácido acetil salicilico, que se usa como analgésico y antipirético. 2. Comprimido fabricado con esta sustan-cia.
Diccionario p. 232, website at http://www. rae.es. The PTO provided the following translation:
aspirina. (From the German Aspirin, Registered Trademark), f. Med. White, crystalline solid, constituted by acetyl salicylic acid, which is used as an analgesic and antipyretic 2. Caplet manufactured with this substance.
PTO Br. at 7.
Spanish/English dictionaries, like the Vox Everyday Spanish and English Dictionary (“aspirina ® nf aspirin®”) show the trademark status. The Internet cite “diccionarios.com” similarly recognizes AS-PIRINAS trademark status (“Aspirina, del A. Aspirin, nombre comercial registrado,” which translates to as “Aspirina, from the German Aspirin, registered trademark”). The Board gave dispositive weight to a few Internet sites that did not include the trademark designation. This was incorrect, for there was no evidence of use of ASPIRINA other than as a trademark.[1] The record contains no evidence of generic usage in the marketplace. To the contrary, the dictionaries and the great weight of usage show ASPIRINA as a trademark.
Commercial policy and international treaty obligations do not favor depriving trademark owners of valuable commercial rights. See Paris Convention for the Protection of Industrial Property of March 20, 1883, Article lOóis (“The countries of the Union are bound to assure nationals of such countries effective protection against unfair competition [including prohibiting] indications or allegations liable to mislead the public as to the nature, the manufacturing process, the characteristics, the suitability for their purpose, or the quality, of the goods.”) As recognized in the Agreement on Trade-Related Aspects of Intellectual Property Rights, Annex 1 C (Apr. 15, 1994) (“use of a trademark in the course of trade shall not be unjustifiably encumbered by special requirements”), public and private interests are served by recognition of trademark rights, not their gratuitous eradication.
The trademark status of ASPIRINA was not shown to have been eliminated in *972 any country, and the record shows no challenge to its trademark status in the United States. The PTO Board avoided ruling that ASPIRINA is generic, although on this appeal the PTO Solicitor argued, for the first time, that ASPIRINA is generic because “aspirin” is generic. The Solicitor argued that “[w]ere it not the case, simply adding an ‘a’ to words like ‘vitamin,’ ‘penicillin,’ or ‘ibuprofen,’ would miraculously transform each of these generic terms into registrable trademarks.” PTO Br. at 20. Such a miracle was long ago achieved at the PTO; see, e.g., UN-ASPIRIN, U.S. Reg. No. 1311932; ASPIRIN 911, U.S. Reg. No. 2930100; VITA-MIND, U.S. Reg. No. 2944356; VITA-MAN D, U.S. Reg. 2316584; SUPER-VITAMINS, U.S. Reg. No. 0695090; THE TEA.COM, U.S. Reg. No. 3110603; TEA LC, U.S. Reg. No. 2978632; iPHONE, U.S. Reg. No. 2293011. In Sperry Rand Corp. v. Sunbeam Corp., 58 C.C.P.A. 1259, 442 F.2d 979 (1971) the court held that the mark LEKTRONIC, although differing by only one letter from “electronic,” is not merely descriptive and is capable of trademark status. The question is not how many letters in a word are changed; the question is whether trademark significance is possessed. Mishawa-ka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942) (“The protection of trade-marks is the law’s recognition of the psychological function of symbols. If it is true that we live by symbols, it is no less true that we purchase by them.”)
The panel majority errs in ruling that foreign trademark status is irrelevant because foreign nations have different trademark laws. Maj. op. at 969-70. National and international trademark systems take cognizance of trademark status in other countries, for the international movement of goods and persons requires avoidance, not facilitation, of commercial confusion and deception. See Paris Convention, Article 6 quinquies (“Every trademark duly registered in the country of origin shall be accepted for filing and protected as in the other countries of the Union.... In determining whether a mark is eligible for protection, all the factual circumstances must be taken into consideration, particularly the length of time the mark has been in use”). The status in other countries of a well-known foreign-origin mark for an established product in wide use is not irrelevant to its treatment in the United States legal system, whether for purposes of federal registration or consumer and source protection. Persons in the United States may know the mark ASPIRINA from foreign markets, where goodwill has inhered for a century of sole source of the product. In a recent decision considering issues of foreign marks, the court observed that: “Trademark is, at its core, about protecting against consumer confusion and ‘palming off.’ There can be no justification for using trademark law to fool immigrants into thinking that they are buying from the store they liked back home.” Grupo Gigante SA de CV v. Dallo & Co., 391 F.3d 1088, 1094 (9th Cir.2004) (footnote omitted).
The issue here is not one of extra-territoriality of unregistered marks, as the panel majority suggests, but of registration of a well-known foreign mark when the legal requirements for United States registration have been met. See In re International Flavors & Fragrances, Inc., 183 F.3d 1361, 1368 (Fed.Cir.1999) (“Federal registration provides a useful means for the public to provide enhanced legal protections to a common law property right in exchange for protection of the public against palming off and misrepresentation in the marketplace.”) It is highly inappropriate to gratuitously deprive the holder of a valuable property right, a mark having *973 long international stability and repute, of the safeguards and benefits of federal registration. To deny the statutory federal registration, there must be clear and convincing evidence of the invalidity of that property right and a sound public interest served by its forfeiture. See In re TradeMark Cases, 100 U.S. 82, 92, 25 L.Ed. 550 (1879) (“The right to adopt and use a symbol or a device to distinguish the goods or property made or sold by the person whose mark it is, to the exclusion of use by all other persons, has long been recognized by the common law [to be] a property right....”)
The principle that law abhors a forfeiture is imbedded in our jurisprudence, and it is noteworthy that the decision of the PTO left the door open for proceedings such as a showing of secondary meaning in the United States. See McCarthy, supra. However, the panel majority goes farther than the PTO and holds that the ASPIRI-NA mark is simply the translation of a generic word, thereby slamming shut the PTO’s open door. Although the panel majority acknowledges that the issue of whether ASPIRINA is a generic word was not before the Board and is not before this court, the majority holds it unregistrable because it is similar in “appearance, sound, and meaning” to the generic English word “aspirin.” Thus the court holds that because “aspirin” is generic, so is ASPIRI-NA. There was no hearing on the issue of genericness. See In re Merrill Lynch, Pierce, Fenner, and Smith, Inc., 828 F.2d 1567, 1571 (Fed.Cir.1987) (“The burden of showing that a proposed mark is generic remains with the Patent and Trademark Office [and requires a] ‘substantial showing by the Examining Attorney ....’” quoting The Trademark Manual of Examining Procedure § 1305.04 (1974, rev. 1983)). The Court has consistently held that a hearing is necessary before the deprivation of a property right. See, e.g., Fuentes v. Shevin, 407 U.S. 67, 80-82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (“The purpose of this [Due Process notice and hearing] requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment — to minimize substantively unfair or mistaken deprivations of property-”).
On the examination record, the Board’s refusal of registration is not supported. I must, respectfully, dissent.

. Bayer states that it has requested correction of the improper online uses. The policing of well-known trademarks is well known to proprietors. See 2 McCarthy on Trademarks and Unfair Competition § 12:1 (4th ed.2007) (discussing the importance of policing improper trademark use by others, "[s]ometimes gener-icide occurs as a result of the trademark owner’s failure to police the mark, resulting in widespread usage by competitors leading to a perception of genericness”). Such "widespread usage” is not here suggested.