300 F.Supp. 507 (1968)
BLAW-KNOX COMPANY, Plaintiff,
v.
Walter L. SIEGERIST, Charles C. Litsch and the Medart Engineering and Equipment Company, Defendants.
No. 63 C 389(3).
United States District Court E. D. Missouri, E. D.
January 16, 1968.
*508 Norris H. Allen, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., Walter J. Blenko, Blenko, Hoopes, Leonard & Buell, Wm. Henry Venable, Pittsburgh, Pa., for plaintiff.
David F. Crossen, Clayton, Mo., Kingsland, Rogers, Ezell, Eilers & Robbins, St. Louis, Mo., for defendants.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
This is an action seeking relief from infringement of a trademark and related unfair competition. Defendants have asserted a counterclaim for unfair competition. Jurisdiction is grounded on the Lanham Act (15 U.S.C. Section 1116 et seq), 28 U.S.C. Section 1338, as well as on diversity of citizenship. Defendants question our diversity jurisdiction based on the amount involved. As appears infra, we have jurisdiction of all claims.
This litigation stems from the voluntary liquidation of The Medart Company, a St. Louis based corporation, in August, 1954. For many years, The Medart Company successfully engaged in the business of making various metal products, and the name Medart was widely recognized as synonymous with quality. Among the products manufactured by The Medart Company were bar and tube machinery and power transmission equipment. In connection with its voluntary liquidation, the assets of the machinery division, which manufactured the bar and tube machinery and the power transmission equipment, were sold to Emerman Machinery Company of Chicago. The assets sold included all designs, drawings, specifications, and customers' orders, as well as inventions, patents, tradenames and trademarks and the good will associated therewith. Federal registration for "Medart", applied to bar and tube machinery and power transmission equipment, had been granted to The Medart Company in April 1938.
In conjunction with its transaction with Medart, Emerman immediately resold Medart's bar and tube machinery business to Continental Foundry and Machine Company of East Chicago, Indiana, together with all rights to the trademark and tradename "Medart". Continental in turn gave back to Emerman an assignable license to use the trademark "Medart" on power transmission equipment, *509 but reserving to itself all rights to use the trademark on bar and tube machinery. Included in Continental's purchase were the "(d)esigns, drawings and specifications relating to the bar and tube equipment business, and all customer's orders, inquiries and correspondence or other documents or materials pertaining thereto * * * together with any filing cabinets used for the storage of such items." Plaintiff's rights are derived through Continental, whose assets it acquired in 1955.
Walter Siegerist, Sr., father of defendant Walter L. Siegerist (Siegerist), had been president of The Medart Company until shortly before its liquidation. Siegerist was then Medart's machinery manager, and defendant Charles Litsch was a shop foreman of The Medart Company. In mid-August, 1954, the Siegerists, father and son, and several other key employees of The Medart Company, became associated with Continental. The elder Siegerist remained with Continental and then with Blaw-Knox until his death. Defendant Siegerist left Continental's employ in February, 1955. One of his original assignments with that company was to see to it that Continental had a complete set of Medart drawings relating to the bar and tube machinery.
Litsch was employed by Emerman immediately following its purchase of The Medart Company assets and until November, 1954, as a kind of one-man caretaker of the assets which had not been removed from the building which The Medart Company had occupied and which Emerman had acquired in the original transaction. On November 9 and 10, 1954, a professional auctioneer conducted for Emerman what was advertised as a $4,000,000 auction of the Medart factory and office equipment, including machine tools, furniture and fixtures, although not all of the office equipment was sold nor was any part of the power transmission inventory, other than 350 rolls of steel.
Shortly after the auction was concluded, Litsch left Emerman's employ. Thereafter, in mid-1955, prior to the acquisition of Continental's assets by Blaw-Knox, Litsch purchased from Emerman the former Medart power transmission business, including the inventory of parts. In connection with this purchase, Litsch was granted by Emerman a license to use the trademark "Medart" upon power transmission equipment. Emerman's assignment to Litsch of the license to use the trademark "Medart" in the power transmission business specifically recited the prior transfer thereof to Continental "together with the good will connected with the use of and symbolized by said mark in the bar and tube equipment business acquired by Emerman from The Medart Company." Litsch operated his new business from the old Medart building, first as a tenant of Emerman and then as a tenant of the purchaser of the building. In March, 1957, Litsch, Siegerist and two other individuals organized defendant corporation, The Medart Engineering and Equipment Company (Meeco), and the assets of Litsch's power transmission business were transferred to the new corporation. The new firm also operated from the building which had formerly been occupied by The Medart Company, and remained there until 1962 when it moved to a new location.
Prior to its incorporation, the Litsch business was confined to power transmission items. When Siegerist joined forces with Litsch, they broadened the scope of their operations to include the sale and repair of bar and tube machinery, both new and used. This fact created complications resulting in part from the use of the word "Medart" as part of the corporate name.
Plaintiff does not question the right of defendants to use the name and mark "Medart" or to profit by the good will generated thereby to the extent such use is authorized by the license. However, that license is a limited one, and the right to use the trademark and tradename may be exercised only in connection with the power transmission business. Defendants had actual knowledge *510 that the license granted to Litsch gave him and his assigns no right to make use of the trademark or tradename "Medart" or the good will thereof in the bar and tube machinery business. Nevertheless, defendants engaged in intentional conduct which is wholly unauthorized by the license.
There is no doubt that commencing at least with the incorporation of Meeco, defendants had the deliberate purpose and intent of appropriating the good will attached to the tradename and trademark "Medart" for their benefit in developing a profitable bar and tube machinery business, well knowing that they had no right to do so. To this end defendants employed various strategems and devices, including the following:
(1) They intentionally made use of the name "Medart" as part of the corporate name of Meeco, with knowledge that Meeco would be the only Medart engaged in the bar and tube machinery business. The effect of such use was magnified by the fact that defendants for a number of years operated from the former plant of The Medart Company and in the City of St. Louis, the well-known location of Medart and Medart products. Defendants were well aware that the name "Medart" is one of the best known and respected in the field, so that the only reason for defendants Siegerist and Litsch to use that name was to profit by the good will incident thereto, good will as to which (for bar and tube machinery) they are not entitled.
(2) They published and distributed to the trade various advertising bulletins and other material which was deceptively similar in its format to that of The Medart Company as it formerly existed. One of the earlier such pamphlets bore the false statement "Medart Service Since 1879." In this connection, defendants adopted for their machines the identical size numbering system used for many years on the comparable Medart machines and with which Medart customers were familiar.
(3) The stationery of Meeco appears to be almost an exact copy of that of the former Medart Company, both as to the size and kind of type used and the lettering thereon, except for the different address and the substitution of the words "Engineering and Equipment Co." for the word "Company." The latter change is of no real significance, since the name "Medart" (in both instances) was printed in very large letters, whereas a much smaller type was used for the remainder of the name. The effect produced by the stationery goes beyond mere similarity. The impression conveyed to one who is aware of the difference in the name, is that the company is the same but has simply changed its name.
(4) Inquiries and other correspondence pertaining to bar and tube machinery which were addressed to The Medart Company were opened and answered by defendants as though the inquiry had been intended for Meeco. In so doing, defendants not only failed to disclose the fact that Meeco was an entirely new company wholly unrelated to The Medart Company and in no wise the successor in interest to Medart's bar and tube machinery business, but replied in a manner which tended to mislead prospective customers into believing that Meeco was either the original company with a changed name or its successor in interest as to bar and tube machinery.
(5) Numerous drawings and tracings relating to bar and tube machinery manufactured and sold by The Medart Company which had come into the possession of defendants Siegerist and Litsch, and which were in fact the property of plaintiff and its predecessor in interest, Continental, were utilized by defendants for their profit and benefit. These drawings are of incalculable value to any competitor of plaintiff in the sale of bar and tube machinery, not only for the purpose of enabling one to make repairs and provide parts for the equipment, but also for use in making improvements in the machinery. Defendant *511 Siegerist claims that he was given possession of a set of drawings prior to the liquidation of The Medart Company for safekeeping purposes. Even so, it is a far cry from "safekeeping" to make use of the drawings for personal or corporate profit. Others of the drawings and prints were claimed to have been obtained by Litsch after the auction, and at a time when he was aware that any such items, to the extent they had value, were the property of Continental or of plaintiff, Litsch testified that he carefully went through the various drawings at the time Meeco moved from the old Medart premises in 1962, and kept those which he felt might be of some value in the future and turned them over to defendant Siegerist. These drawings, of course, are in addition to the set already admittedly held by Siegerist.
Plaintiff was not aware that defendants had possession of these drawings and prints nor that they were making use of them. Defendants also had possession of photographs of Medart machines which were used for the purpose of attempting to secure orders while misleading prospective customers as to the relationship of Meeco to The Medart Company.
(6) Defendants, without the knowledge of plaintiff, acquired possession and made use of a list of the names of customers of The Medart Company containing information concerning serial numbers, dates of sale, and the types of machines built by The Medart Company and sold to these customers. This list is invaluable, particularly in correlating such information with the drawings. The list and the information contained thereon is the property of plaintiff, and in no event do defendants have any right to make use of the information.
It is evident that long prior to the incorporation of Meeco, defendant Siegerist, even while employed by Continental, and in violation of the duty he owed to his employer, carefully preserved for future personal use the technique and know-how of The Medart Company's bar and tube machinery business, as evidenced by his retention of the drawings, prints, and photographs of The Medart Company's machines, as well as its customer lists containing information as to types and numbers of machines and dates of manufacture. When Meeco was organized, Litsch, well aware of Siegerist's intention to enter the bar and tube machinery business making use of the name Medart, cooperated in that endeavor. True, initially Siegerist did not devote his full time to the business of Meeco and Meeco did not initially manufacture its own bar and tube machinery. However, it is clearly to be inferred that Siegerist made use of the drawings of the Medart machines which had remained in his possession for "safekeeping" to transfer the know-how thereon to other drawings in developing the machines now sold by Meeco.
Defendants argue that the machines sold by them are improvements over the Medart machines sold by plaintiff, and that Meeco machines are sold on merit. Whether or not this is so in some instances is beside the point. It was the improper use of the name "Medart", with all of the reputation and good will attached thereto, which enabled defendants to have the opportunity of presenting the merits of their machines to prospective customers.
Defendants also advert to testimony of Siegerist concerning instructions given by him to his representatives to make clear to prospective customers that Meeco is not connected with Blaw-Knox and that Meeco machines are not Medart machines. Concededly, no such cautionary instructions are given with respect to defendants' lack of connection with any other seller of bar and tube machinery. Assuming that such instructions were given (although it is clear that they were not followed in many instances), the very fact that precautions of this nature were deemed necessary tends to support our conclusion of the likelihood of confusion.
Defendants argue that the present is not a run-of-the-mill trademark infringement, tradename use, or unfair competition *512 case, and in this respect defendants are correct. They point out the "unique" situation in the present case by reason of the fact that the original trademark "Medart" denoted but one origin, that is, "The Medart Company", but that it was subsequently divided into two origins, in that the trademark as applied to bar and tube machines now has reference to Blaw-Knox manufactured equipment, whereas applied to power transmission items it now has reference to Meeco equipment. However, we see no insurmountable obstacle to enforcing plaintiff's rights, particularly in a situation where the defendants are intentionally violating them.
Of importance, whatever rights defendants have with respect to the use of the name or mark "Medart", that right extends no further than the use thereof in connection with the power transmission business. Defendants had no right, by adopting "Medart" as part of the corporate name, to make use thereof in connection with what they call the "normal expansion" of their business into the production, sale and repair of bar and tube machinery. It was neither "normal" nor right for defendants to appropriate the good will owned by plaintiff. Defendants' decision to expand into the bar and tube machinery business should have been accomplished either by a change in the corporate name theretofore used for the power transmission business or by the utilization of another and entirely separate and distinct organization the name of which does not include "Medart" or any similar name.
Defendants' very adoption and use of a corporate name which includes "Medart" (the only part of their name which has any meaning to persons interested in bar and tube machinery) and the use of that name on their stationery and advertising in a manner likely to cause confusion or mistake as to the origin of bar and tube machinery constitutes not merely an infringement of plaintiff's registered mark, but also unfair competition.
Defendants correctly point out that the original trademark registration of "Medart" expired without renewal on April 19, 1958. However, plaintiff was the owner of that registered trademark until its expiration, remained the owner of the mark after the registration expired, and is now the owner of the subsequently registered trademark "Medart" applied to bar and tube machinery, federal registration 754,078, which was issued August 6, 1963. Defendants' improper conduct commenced while the former registration was effective and has continued ever since.
The right of defendants to compete with plaintiff in the sale, service and repair of bar and tube machinery is unquestioned. However, they may not compete unfairly. We find that by defendants' intentional use of the reputation and good will attached to the trademark "Medart" in competition with plaintiff in the bar and tube machinery business, defendants have been guilty of unfair competition. Equally unfair is their use of the drawings, prints and photographs of Medart machines and the Medart customer list, as well as their method of advertising and use of deceptively similar numbering of the various models of their machines.
There is substantial evidence, which we credit, of actual confusion as to the source of the products and service sold by defendants, and as to the relationship of defendants' bar and tube machinery business with plaintiff and The Medart Company. At the very least, we find that there is a clear likelihood of such confusion. No more is necessary, David Sherman Corporation v. Heublein, Inc., 8 Cir., 340 F.2d 377, 379. It is true that defendants have placed a plate on their machines containing the mark "Meeco". However, the plate also contains the words "Medart Eng. & Eq. Co., St. Louis, Mo., U.S.A.", so that defendants intentionally continue to capitalize on the Medart reputation and good will. The name and mark "Meeco" is not employed except in conjunction with "Medart", so that customers and prospective *513 customers are led to believe that Meeco and Medart are one and the same.
The name and mark "Medart" has long since acquired a distinctive or secondary meaning in the market place. As applied to bar and tube machinery, Medart means the machines designed and engineered by The Medart Company and manufactured by Medart or its successors. Plaintiff does not do business under the Medart name, but it does use the mark "Medart" in addition to its own name on bar and tube machinery, thereby informing the public that as successor in interest to Medart, Blaw-Knox is making and selling Medart-designed and engineered equipment.
Hence, when defendants by their intentionally misleading conduct made it appear that Medart Engineering and Equipment Company was either the original Medart or its successor in the manufacture, sale and service of bar and tube machinery, they thereby traded and capitalized on the good reputation of the name "Medart" and engaged in unfair competition with plaintiff. They created a likelihood of confusion and mistake as to the identity and source of their products, as well as misleading prospective customers as to the genuineness of their products as "Medart" equipment. And since the name "Medart", applied to any equipment, of itself creates an opening or opportunity not otherwise available enabling defendants to interest prospective customers in their own equipment, defendants obtained an unfair competitive advantage by using the name "Medart" for their bar and tube machinery business, the damaging effect of which lasts long after the initial confusion has disappeared. "In all cases of unfair competition, it is principles of old fashioned honesty which are controlling." Radio Shack Corporation v. Radio Shack, 7 Cir., 180 F.2d 200, 206.
It follows that even if customers ultimately ascertained (sometimes after equipment had been purchased, serviced or repaired) that Medart Engineering and Equipment Company was in fact an entirely new and separate operation and that its products were not in fact Medart products, defendants are not excused. This for the reason that the very opportunity of presenting their product to prospective customers was obtained by means of their improper and unfair conduct, so that it is quite likely that much of the bar and tube machinery business in which defendants were and are engaged to their profit would otherwise have gone to plaintiff.
It is further evident that the possession of the drawings of Medart machines also enabled defendants to make use of them in re-engineering and manufacturing similar machines to be sold by defendants, in addition to the fact that the very possession of such drawings by defendants would tend to mislead prospective customers as to the true identity of Meeco.
With respect to the thousands of drawings, prints and tracings which came into their possession, defendants attempt to segregate them into categories. Admittedly, at least some of them were in the possession of Siegerist prior to the sale to Continental. A relatively few are said to be the property of customers, but even as to these we find defendants have no right to make use of them except for the purpose of filling the particular customer's orders.
The overwhelming majority of the drawings, prints and tracings are described by defendants as "residue." These are said to be those drawings, prints and tracings which were still in the Medart building at the time of Emerman's auction. Litsch so testified. The picture he painted was that thousands of such items were dumped on the floor from the filing cabinets in which they were stored when these filing cabinets were sold at auction and carted away.
We do not credit this testimony. The cabinets owned by Emerman and which contained the power transmission drawings were not sold at the auction. As we have noted supra, the filing cabinets in which the bar and tube drawings, *514 prints and tracings were stored were the property of Continental under its contract of purchase. Emerman had no title either to these cabinets or to the drawings. Litsch was Emerman's representative on the premises at the time. There is no explanation of record which would even tend to justify the sale of Continental's filing cabinets on behalf of Emerman at Emerman's auction, and we do not believe these cabinets were so sold. The inference is clear that all of the drawings, prints and tracings which Siegerist had not theretofore turned over to Continental were either already in his possession or remained in the filing cabinets on the Medart premises until such time as Litsch removed them and transferred possession to Siegerist without the knowledge or consent of Continental or Blaw-Knox.
Defendants make the further argument that plaintiff had knowledge that defendants were in possession of the drawings and prints long before this suit was filed or a claim asserted thereto by plaintiff. We find against defendants on this claim. It is true that Schneider testified that prior to the Medart sale to Emerman he was informed by Siegerist that the latter had a complete set of Medart drawings. At that time both Schneider and Siegerist were employees of Medart. The mere fact that Schneider (as well as Siegerist) later accepted employment with Continental, and that Schneider continued in such employment with Continental and later with Blaw-Knox, is not, under the facts of record here, material in establishing defendants' contention. In the first place, knowledge that Siegerist had a set of the drawings prior to the sale of the business may not be equated with knowledge that Siegerist retained such drawings after they should have been delivered to Continental. Siegerist himself conceded that he did not disclose to Continental his retention of any of the drawings. Moreover, it was not until many years later that plaintiff obtained actual knowledge that Medart drawings were in fact being used by defendants. And it was not until long after this suit was filed that plaintiff received substantial information as to the existence and number of the drawings and their use by defendants. We find that neither Continental nor Blaw-Knox ever abandoned any claim of ownership of the drawings.
It may well be that included in the mass of drawings are some which are in fact the property of customers, but in view of the lack of credibility of defendants' principal witnesses, we cannot accept their unsubstantiated statements to this effect. They have refused to designate the particular customers they now claim are the owners of specific drawings, and have made no effort to disclose how the drawings came into their possession from the customers nor the purpose thereof. We have no way at this stage of the case of segregating any possible customer-owned drawings, a situation deliberately created by defendants in commingling any such drawings with the others. We find that defendants have no rights in the drawings and prints which are now in the custody of the Court as exhibits.
Defendants argue that plaintiff is guilty of laches amounting to acquiescence and estoppel. Their major contention is that plaintiff did not adequately inform customers and prospective customers of its acquisition of the Medart bar and tube machinery business, and has not aggressively acted to transfer to Pittsburgh the good will of the "Medart" mark until after defendants became a competitor in the bar and tube machinery business. We fail to see how such conduct or inaction, if so, could operate to authorize defendants to appropriate that which they knew belonged to Blaw-Knox.
It is true that at the inception of the Medart Engineering and Equipment Company and prior to the time defendants actually sold their own bar and tube machinery, the objections made by plaintiff were relatively mild, undoubtedly because it was not aware of defendants' future plans. Nevertheless, when *515 plaintiff did acquire some knowledge that defendants were actually engaging in the sale of bar and tube machinery, its objections were made known to defendants. Defendants took a calculated gamble in continuing their grossly improper conduct.
The delay in filing suit resulted in large part from plaintiff's endeavors to resolve the controversy without litigation. Defendants had no right in the interim to take advantage of the situation, nor may they now insist they have a license to continue their wrongdoing, since they knew that plaintiff was not in fact consenting to the appropriation of the mark and name "Medart" in the sale of bar and tube machinery. As to the appropriation and use of the drawings and prints, it is all the more clear that plaintiff has never acquiesced therein. We find that defendants have failed to substantiate their defense of laches. We also find against defendants on their defense of unclean hands based on their claim that in registering the trademark "Medart," plaintiff made the false statement that the mark had been used on bar and tube machinery since 1879. That the statement was made in good faith and based on dates recited in prior registrations by The Medart Company cannot be questioned. The burden of proof to establish the defense was upon defendants. The evidence submitted is too weak and insubstantial to meet this burden.
Defendants have questioned our jurisdiction to decide the issue of unfair competition under Section 1338(b), Title 28 U.S.C., on the theory that plaintiff's claim based thereon is not a claim substantially related to its claim of trademark infringement. Defendants also contend that although there is in fact diversity of citizenship, the requisite amount in controversy is not present, thereby depriving us of jurisdiction over the remaining claims of unfair competition. We disagree.
In cases of this kind, the jurisdictional amount is to be determined by the value of the property right which is being invaded, even though the evidence may not explicitly show the extent of the damage to plaintiff. Obviously, the good will represented by a trademark or tradename is intangible, and for that reason is difficult of precise valuation. However, under the record in this case, it is clear that the value of the trademark and tradename "Medart" as applied to bar and tube machinery is far in excess of $10,000.
The amount of bar and tube machinery business admittedly done by defendants of itself evidences that the value of the Medart good will far exceeds $10,000. The equipment involved in this business is expensive, each item costing thousands of dollars. And we believe it of significance that at the conclusion of the evidence, when defendants' counsel realized that the Medart drawings were being held as exhibits, he made the assertion that unless defendants were permitted to withdraw them defendants would be out of business. We find from a consideration of the evidence as a whole that the controversy in this case involves an amount substantially in excess of $10,000, and that we have jurisdiction to decide all the issues and facets of defendants' unfair competition, not merely those related to the trademark infringement claim.
We next turn to defendants' counterclaim. Originally asserted as a claim for violation of the antitrust statutes, this claim has now been narrowed to one for unfair competition, on the theory that plaintiff has made wrongful use of the present lawsuit for the purpose of diverting business from defendants. We find no improper conduct on the part of plaintiff. To the extent that this finding may involve the issue of credibility, such issue is resolved against defendants.
Defendants' counterclaim is predicated essentially on plaintiff's dealings with two customers, United States Steel and Whirlpool. In each instance, we find that plaintiff's representative acted in good faith, made no untruthful statements, and was guilty of no misrepresentations. In the case of Whirlpool, *516 which was confused as to the relationship of plaintiff to Meeco, information concerning the actual facts was imparted and such information did not go beyond the truth or the necessities of clearing up the confusion. As to United States Steel, the evidence shows that its representative, Mr. Dudek, himself made inquiry of plaintiff's representative and that his inquiry was truthfully answered, the answer including the fact that the present suit was pending. The nature of the suit was truthfully stated. We note that plaintiff's successful bid for the equipment purchased by Dudek was lower than that submitted by defendants. There simply was no unfair competition by plaintiff.
Having found defendants guilty of infringement and unfair competition, it follows that equitable relief should be granted to plaintiff. We believe that at the very least plaintiff is entitled to an injunction against defendants restraining them from further infringement of the trademark "Medart" and from competing unfairly with plaintiff, and specifically enjoining defendants from further using the name and mark "Medart" in any combination or form as a designation, mark, label or otherwise in connection with the bar and tube machinery business, as well as from using said name "Medart" as part of the corporate name of Medart Engineering and Equipment Company so long as said defendant is engaged in the bar and tube machinery business, and also enjoining defendants from using the drawings, prints, patterns, specifications, tracings, photographs and customer lists of the former The Medart Company related to the bar and tube machinery business of The Medart Company, and ordering that all of said drawings, prints, patterns, specifications, tracings, photographs and customer lists of the former The Medart Company, including those filed as exhibits in this cause, be delivered up to the Clerk of this Court and by him destroyed. The destruction should be delayed for a reasonable period of time to enable defendants to notify any customers, whose drawings may be included in the exhibits, of this Order, and for any such customers to assert a claim herein to any such drawings.
The evidence is not sufficient for us to make an award of damages to plaintiff although damages have undoubtedly been sustained, and we decline to order an accounting.
Submitted with the case is defendants' motion to strike certain portions of plaintiff's reply brief which, in refuting assertions made in defendants' brief, refer to additional facts and documents not contained in the record. We have confined our consideration to the facts of record, as we are required to do, so that even if it be assumed that a motion of this sort is a proper one, we now deny said motion as moot.
This memorandum opinion constitutes our findings of fact and conclusions of law. Counsel for plaintiff are directed to prepare a judgment consistent with this opinion, and submit same to counsel for defendants for approval as to form, and then to the Court for entry.