**VARITRONICS SYSTEMS, INC., Plaintiff,**

v.

**MERLIN EQUIPMENT, INC., etc., and Reynaldo Lopez, Defendants.**

No. 87–0668–Civ.

United States District Court, S.D. Florida, Miami Division.

March 8, 1988.

Daniel W. McDonald of Merchant, Gould, Smith Edell, Minneapolis, Minn., Cartis Carlson, Fowler, White, Burnett, Murleyl, Miami, Fla., for plaintiff.

Richard S. Ross of Faro & Ross, N. Miami Beach, Fla., for defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Plaintiff's Motion for Summary Judgment and to Dismiss Defendant's Counterclaim.

## BACKGROUND

This is an action in trademark infringement and unfair competition by a Minnesota Corporation, Varitronics Systems, Inc. [hereinafter referred to as "VSI"], against a Florida Corporation, Merlin Equipment, Inc. [hereinafter referred to as "MEI"], and its president/owner, Reynaldo Lopez [hereinafter referred to as "Lopez"], in his individual capacity. VSI manufactures and distributes nationally lettering machines and supplies. These are specialized machines which produce lettering on tape in such a way as to be useful to professionals, such as architects, for example. VSI manufactures and distributes these machines under the Trademark (TM) "MERLIN" with the words "BY VARITRONICS" written beneath it in small letters and with the trademark symbol. This particular TM was registered as of April 2, 1985, although it had been filed sometime earlier. VSI had been using the mark for approximately a year when it was approved and has expended from 1 to 3 million dollars annually for the previous three fiscal years in advertising this product line.

MEI retails KROY brand lettering machines (P's chief competitor), supplies for such machines, SHARP typewriters, and name brand office products from other companies. It does not retail its own products. The parties agreed during a hearing on this matter on February 8, 1988, that KROY had been to the lettering machine business what "Kleenex is to tissues." Counsel for MEI characterized MERLIN as a "glitzy, high-tech upstart" breaking into the business. As demonstrated by the affidavit of VSI's vice-president in charge of sales, VSI was doing an admirable job of breaking into the business: from fiscal year 1985 to 1987, sales grew from approximately $8 million to $26.4 million.

In responding to interrogatories propounded by VSI, Defendant Lopez swore that he had learned of VSI's use of the trademark "Merlin" by "late April or Early May, 1985" and that he had learned of this usage "through the trade." Lopez incorporated under the name Merlin Equipment on May 24, 1985. At that time, MEI was in

the business of servicing office machines, such as typewriters, and had not yet begun distributing other lettering machines, such as KROY. Relatively soon thereafter, MEI requested from VSI distribution rights for its MERLIN brand lettering machines. VSI admits to having learned of MEI's existence at this time; VSI did not, however, have knowledge that MEI was a distributor of any other lettering machine line, including that of KROY, as MEI was not a KROY dealer at the time it first contacted VSI. The uncontroverted evidence shows that VSI believed MEI to be a provider of repair services.

The parties discussed a dealership agreement in the final months of 1986, culminating with MEI's refusal to accept the agreement on the terms offered by VSI in February of 1987. In March of 1987, VSI requested for the first time that MEI stop using its name. MEI refused. Although VSI is not seeking to recover actual damages, it requests reasonable attorneys fees, an accounting of profits and an injunction prohibiting MEI from further using the name "Merlin" in connection with its business, all pursuant to 15 U.S.C. sec. 1117.

## ANALYSIS

### Infringement

To establish a claim for trademark infringement, one must show ownership of a trademark (this can be done by valid registration and by showing actual, prior use) and that the defendant's use of the TM is likely to cause confusion or mistake among the relevant public. *See Chemical Corp. of America v. Anheuser–Busch, Inc.*, 306 F.2d 433 (5th Cir.1962), *cert. denied*, 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963); *Chassis Master Corp. v. Borrego*, 610 F.Supp. 473, 475 (S.D.Fla.1985). Neither the validity of this trademark nor its previous actual use by VSI has been controverted by MEI. Accordingly, the key issues arising out of this Motion for Summary Judgment are whether there exists a genuine material issue of fact either as to the "likelihood of confusion" prong of a trademark claim or as to the existence of a viable defense to such a claim.

### Likelihood of Confusion

■ The following factors aid in determining whether a defendant's use of a trademark creates a likelihood of confusion: (a) the defendant's intent; (b) the type of the trademark; (c) the similarities of the products; (d) the similarity of retail outlets and purchasers; (e) the similarity of advertising media used; (f) the similarity of the infringing mark to the plaintiff's mark; (g) evidence of actual confusion; and (h) the previous contractual and business relations between the parties. The absence of one of these factors is not dispositive, but rather, all must be considered in their totality.

■ (a) *The Defendant's Intent:* In his Response to VSI's Request for Interrogatories, MEI admits that he first learned of the VSI's use of the name Merlin in late April or early May of 1985. He incorporated under the same name on May 24, 1985. It was then that MEI first approached VSI for a dealership agreement. After MEI refused, VSI contends that MEI went into other markets than lettering machine sales. It was later, and without VSI's knowledge, that MEI began to sell Kroy machines while continuing to use VSI's name. VSI's evidence further shows that MEI sold some of VSI's products during this period (though a relatively small quantity).

As Defendant's counsel stated at the hearing on this Motion, although Kroy was the established industry leader, Merlin was known as a high-tech upstart. This sequence of events, especially in light of Lopez' admitted knowledge of VSI's trademark and its product, unavoidably leads to the conclusion that he incorporated under the name Merlin to profit from VSI's trademark by dealing in goods that were either identical or substantially similar from a functional standpoint. Significantly, the Defendants have offered no admissible proof to controvert VSI's proof as to this issue. Accordingly, no material issue of fact remains: out of the innumerable marks that Lopez and MEI might have chosen under which to incorporate, they chose this one with full knowledge of its

preexisting and well-established use. They intentionally adopted VSI's mark to derive benefit from it. This is sufficient of itself for this Court to base a finding of "likelihood of confusion." *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1542 (11th Cir. 1986); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.1980). The Court, however, upon review of the other factors that figure into the "confusion calculus," finds that it is not necessary to rely exclusively on this factor.

■ (b) *The Type of Trademark:* The trademark "Merlin" does not describe any recognizable aspect of VSI's lettering machine; thus, contrary to MEI's unsubstantiated assertions, it is not merely a "descriptive" mark which would be entitled to relatively slight protection. Rather, it appears to be at the very least suggestive, if not an arbitrary and fanciful mark. In either case, it is a mark entitled to strong protection. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1548 n. 92 (11th Cir.1986).

MEI, on the other hand, argues that VSI's mark is a surname—a relatively weak *descriptive* trademark. *See Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 155 (5th Cir.1985)[1]; *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir.1980). In the case at bar, however, Defendant's have offered no proof that Merlin is in fact a surname. Certainly, it is not unlikely that a significant portion of registered marks are in actual use as surnames, even if very rarely. There very well may be a family by the name of "Kodak." This of itself cannot be sufficient to deprive one of the protection of trademark laws. Of course, Merlin was the name of a legendary magician who served in King Arthur's Court centuries ago. MEI, however, has not alleged it to be the surname of anyone even remotely involved in the instant dispute, nor has it offered any evidence demonstrating that it

is the actual surname of anyone else. Its selection appears to be either entirely fanciful, or intended to suggest a magical type of product. In either case, the application of the word "Merlin" to this product cannot be deemed to be descriptive.

■ Additionally, MEI asserts that there have been about 60 different listings under this name in the Federal Trademark Register—including one by AT & T for telecommunications technology. The mere citation by MEI of third party *registrations,* however, is not sufficient proof of the relative weakness of the mark. MEI has not offered any proof as to the extent to which, if at all, any of these marks is *used. See E. Remy–Martin & Co. v. Shaw–Ross Internat'l Imports, Inc.*, 756 F.2d 1525, 1533 (11th Cir.1985). Moreover, none of the marks is directly related to VSI's product line—*e.g.*, many are related to automotive products.

■ Finally, even assuming by way of argument that VSI's mark were merely descriptive, there would be no material dispute as to the fact that the mark has acquired a "secondary meaning," and would thus be protectible nonetheless. First, VSI has spent millions of dollars annually over the past three years in advertising. It has achieved a significant reputation for its product. Second, its sales have increased dramatically, from $8 million in 1985 to $26.4 million in the fiscal year ending July 31, 1987. Thus, it is uncontroverted that VSI has devoted substantial money and efforts into developing a commercially potent trademark. *See Beef/Eater Restaurants, Inc. v. James Burrough Ltd.*, 398 F.2d 637 (5th Cir.1968). Third, where it appears that an infringer intentionally copies a mark, that of itself may be evidence of secondary meaning. *See 20th Century Wear, Inc. v. Sanmark–Stardust, Inc.*, 747 F.2d 81 (2d Cir.1984), *cert. denied* 470 U.S. 1052, 105 S.Ct. 1755,

---

**1.** In *Conan Properties,* the Fifth Circuit in part relied on the fact that the Plaintiff's trademark was registered as "Conan the Barbarian," while the alleged infringer only used the word "Conan" in the name of its business. Thus, it was the fact that the Defendant infringed upon only a portion of the registered mark together with the notion that this portion alone might serve as a surname, that led the court to hold that the word "Conan," by itself, was entitled to lesser protection than a purely fanciful mark. 752 F.2d at 155. In the case at bar, however, MEI adopted VSI's trademark in its entirety.

84 L.Ed.2d 818. On the basis of these factors, none of which the Defendants have controverted by way of an iota of evidence, there appears no reasonable characterization of the facts that would remove the trademark "Merlin" from the scope of protectible marks. This factor contributes to this Court's finding of a "likelihood of confusion."

(c) *The Similarities of the Products:* MEI retails the same type of products that VSI distributes: MEI sells the lettering machines of VSI's closest competitor. Moreover, both sell supplies for these machines. Even if MEI sells accessories not related to this machine, what it does sell renders the product lines sufficiently close in the mind of the public to be confusing. MEI mischaracterizes the issue when it argues that Kroy products and VSI products are readily distinguishable upon sight. The likelihood of confusion at issue here is not as between Kroy and VSI products, but rather as between Merlin brand products and Merlin Equipment, Inc., which sells the machines of VSI's chief competitor. The *identity*, rather than mere *similarity*, of the parties' products results in MEI being listed directly next to VSI's retailers in the Miami Yellow Pages under the heading "Lettering Machines."[2] Upon viewing this page, it is readily apparent that the fact that the MEI sells the same type of machine that VSI distributes, and under the identical name, is highly confusing and very likely to lead a purchaser to go to MEI to purchase a piece of VSI equipment, which MEI will not carry.

(d) *The Similarity of Retail Outlets and Purchasers* and (e) *The Similarity of Advertising Media Used:* As noted above, MEI is listed right next to VSI's distributors in the yellow pages. It's very confusing to figure out who sells either Kroy, Merlin, or both. Significantly, MEI is listed twice: once under the title "Kroy Lettering Machines," and the second time under its corporate title, "Merlin Equipment, Inc." This strongly creates the false impression that MEI sells both of the two leading brands of lettering machines. It

further appears that several retail outlets sell both brands. This strengthens the false impression that MEI does the same.

(f) *The Similarity of the Infringing Mark to the Plaintiff's Mark:* VSI's and MEI's marks are significantly similar. The addition of the words "Equipment Co." to the word "Merlin" by MEI is irrelevant. *See Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1165–66 (11th Cir.1982),; *Blaw–Knox Co. v. Siegerist,* 300 F.Supp. 507, 512 (E.D. Mo.1968). Although MEI uses "Merlin" as a tradename rather than as a trademark, such a use is nonetheless impermissible under federal trade laws. *See Gould National Batteries, Inc. v. Marchetti,* 272 F.Supp. 632 (S.D.Fla.1967); *see also Caesar's World, Inc. v. Caesar's Palace,* 490 F.Supp. 818, 827 (D.N.J.1980). The essence of trademark law is that one party not be able to steal the benefits of another's efforts to build a profitable and strong reputation for his own product. That is exactly what would occur here, whether or not MEI stamped the word "Merlin" on its stock. Individuals are likely to go to MEI to purchase VSI equipment because of the reputation of Merlin brand products. The customer, upon learning that Merlin products are not "in stock" may purchase one of the competitor's products by default, along with other products or services available at MEI. Clearly, MEI would have wrongfully profited from VSI's business reputation under these facts.

(g) *Evidence of Actual Confusion:* Ted Hall, a regular purchaser of Merlin brand products from one of VSI's regular distributors, stated by affidavit that he bought machine supplies from MEI under the impression that MEI was associated with VSI. He stated unequivocally that because of MEI's corporate name, he believed that MEI was affiliated with VSI. Exhibit "C," attached to Ted Hall's affidavit, is a receipt demonstrating that Hall eventually purchased Kroy supplies from MEI. As the Eleventh Circuit stated in *Freedom Savings and Loan Ass'n v. Way,* 757 F.2d 1176, 1185 (11th Cir.1985), "Actual confu-

---

2. The relevant page is reproduced as an Appendix.

sion by a few customers is the best evidence of likelihood of confusion by many customers." Here, although only one incident has been proffered, it is a very compelling incident. Moreover, it has not been controverted by MEI.

Particularly in light of the Court's analysis of the previous factors, the Court finds that there is no material issue of fact as to this issue: there is a strong likelihood of confusion that arises because of the use by MEI of the word "Merlin" in its tradename. Accordingly, unless Lopez and MEI have demonstrated a genuine material issue of fact as to the existence of a defense, summary judgment on the issue of liability should be entered in favor of VSI.

### Defenses

MEI asserts in its defense that VSI's knowledge of MEI's use of the name MERLIN coupled with its failure to prevent such use gave rise to an implicit revocable license to use the name. *See Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1516 (11th Cir.1984). Such revocable license would become irrevocable if VSI either was guilty of laches, or took some action upon which VSI would rely so as to work an equitable estoppel. *Conan Properties, Inc. v. Conans Pizza,* 752 F.2d 145, 151–52 (5th Cir. 1985); *Conagra,* 743 F.2d 1508.

■ The Defendants have not met their burden to establish the defense of laches. To do so, it must show that there has been an inexcusable delay in the exercise of a right that unduly prejudices the other party. The asserted delay in this case is a period under two years. This does not constitute undue delay. *See AmBrit,* 812 F.2d at 1546.

Moreover, any delay that did occur was excusable inasmuch as VSI was attempting, through the negotiation of the dealership agreement, to avoid resorting to the judicial process for relief. Settlement of legal disputes is a highly favored course of conduct for which a party should be rewarded, not penalized. It is not inexcusable that VSI did not seek relief or attempt to negotiate with MEI until after it learned that MEI was distributing the machines of VSI's competitor. It was only at that point that VSI became concerned that MEI's use of the name "Merlin" would be materially misleading and detrimental to VSI's interests. Prior to that time, VSI was reasonably believed that MEI's position as a seller of repair services made confusion substantially less likely. VSI should not be estopped for waiting until the infringing use posed an actual problem before seeking relief. Finally, VSI contends that MEI has offered no evidence that it was prejudiced in any way by VSI's delay.

■ The only act that MEI alleges which would estop from revoking MEI's "implied license" to use the name "Merlin" is VSI's offer of dealership status to MEI. The cases cited by MEI in this regard are totally inapposite. Each case presents the scenario in which a plaintiff actively encouraged a defendant to adopt or use the mark which subsequently became the subject of an infringement action. MEI has not even alleged that it relied on the asserted conduct in any way; nor has it asserted any detriment resulting from VSI's conduct. VSI's offer to MEI occurred approximately one and a half years into MEI's corporate life and only a few months before VSI filed the instant action. MEI's business was already off and running before VSI performed any act upon which MEI can claim to have been induced to rely. The fact that MEI may have established goodwill in its name is irrelevant. This is a concern that Lopez ought to have considered before deciding to incorporate under this name instead of under any of the other infinite combinations of letters that one may devise from our alphabet. MEI and Lopez are without any defense to VSI's claims.

The Court's above conclusions require that summary judgment be entered in favor of VSI on its Federal and Florida claims of unfair competition and trademark infringement. *See Rolex Watch U.S.A., Inc. v. Canner,* 645 F.Supp. 484, 496 (S.D. Fla.1986); *Gould National Batteries, Inc. v. Marchetti,* 272 F.Supp. 632 (S.D.Fla. 1967).

### Counterclaim

■ As to the sole remaining count of Defendant's Counterclaim[3], the only damages that Defendant can be made out to have alleged is the cost of having to defend this trademark infringement lawsuit. Defendant may resort to a separate statutory provision under the Lanham Act that determines the availability of such relief. 15 U.S.C. sec. 1117. In light of this provision, Congress clearly did not intend that a situation such as this be actionable of itself as a distinct violation of trademark and unfair competition law. *Cf. Comidas Exquisitos, Inc. v. Carlos McGee's Mexican Cafe, Inc.,* 602 F.Supp. 191 (S.D.Iowa 1985) (treating a similar counterclaim as one for malicious prosecution and dismissing).

### Relief

■ VSI requests, by way of remedy, injunctive relief, an accounting of profits, and attorneys fees. Title 15 U.S.C. sec. 1117 allows recovery of reasonable attorneys fees in "exceptional cases." Inasmuch as this case does not appear exceptional to this Court, the Court will exercise its discretion to deny such relief.

■ As to VSI's request for an accounting of MEI's profits, section 1117 only requires the Plaintiff to prove the extent of the Defendant's sales. The burden then shifts to the Defendant to prove all allowable deductions and set-offs from this amount. This scheme, however, logically applies to the situation in which a Defendant has reproduced the Plaintiff's mark onto the Defendant's goods and profitted

from their sale. In the present situation, VSI cannot reasonably assert that MEI's profits are attributable to the unlawful use of the word "Merlin" in MEI's tradename. MEI sold Kroy goods, clearly marked as such. Although MEI's use of VSI's mark may unfairly attract customers who would otherwise patronize retailers of both brands, it seems unduly harsh and inequitable to assume that any sale of a Kroy lettering machine resulted in a usurpation of an increment of profit to which VSI was entitled. Therefore, the Court will exercise its discretion to deny this element of relief to VSI. *Cf. Mishawaka Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942).

■ As to the final element of relief sought by VSI, the Court is of the opinion that the appropriate remedy under the facts of this case is injunctive relief against further use by Lopez and MEI of the name "Merlin." Accordingly, it is hereby

ORDERED AND ADJUDGED that the Plaintiff's Motion for Summary Judgment the Plaintiff's Motion to Dismiss are both GRANTED. The Plaintiff is hereby directed forthwith to meet with the Defendants to fashion injunctive relief in light of this Court's ruling. In the absence of an agreement as to such relief, the Plaintiff will submit a memorandum briefing this issue within 15 days of the date of this Order, to which the the Defendants will have 10 days in which to respond, after which the Plaintiff will have 5 days in which to reply. A Final Judgment delineating the scope of injunctive relief will be entered thereafter.

---

3. The parties stipulated to the dismissal of the second count of the counterclaim.

## A STEPHENS AUTO TAG AGENCY

— ONE STOP SERVICE —
CENTRALLY LOCATED FOR YOUR CONVENIENCE

**836-1142**

**AUTO TAGS**
AUTO TAG AGENCY

TRANSFERS/TITLES
NOTARY
— HUNTING AND FISHING LICENSES —
BOAT REGISTRATIONS ● PHOTOCOPYING
CERTIFIED PUBLIC SCALE
STATE INSPECTED
ONLY 15 MINUTES FROM YOU!
AUTO INSURANCE

STEPHENS  24HR TOWING

9500 N.W. 27 AVE.   SAME FIRM AS TERMINAL AGENCY INC

## AUTO TAGS & TITLES

Auto Tags ● Titles ● Transfers ● Photocopies
Boat Registrations ● Sales Tax Collected
Notary Public ● Out of State ● Fast Titles

### NORTH DADE AUTO TAG AGENCY

Mon.-Fri.
9:00-6:00   1621 N.E. 163rd STREET   **945-1372**
Sat. 9:00-5:00   NORTH MIAMI BEACH, FL 33162   (L-4344)

## AUTO TAGS

TAGS ● TITLES ● OUT OF STATE ● TRANSFERS
AUTO ● BOAT ● RENEWALS ● SALES TAX COLLECTED
CHECKS CASHED ● MONEY ORDERS
NOTARY PUBLIC ● PHOTOCOPIES   WESTERN UNION
INSURANCE ● P.I.P. ● INCOME TAX

### 183rd ST. AUTO TAG AGENCY

MON — FRI 7am — 11pm   **652-8800**   804 N.W. 183rd STREET
SAT 7am — 5pm   MIAMI, FLA 33169

## S. DADE — KENDALL
### Alliance
### AUTO TAG AGENCY

AT MILLER SQUARE
MON — FRI 9-5  SAT 10-2
● AUTO TAG RENEWALS & TITLE TRANSFERS
● BOAT DECALS & TITLE TRANSFERS
● HUNTING & FISHING LICENSES
● NOTARY PUBLIC
● INSURANCE AVAILABLE
SE HABLA ESPAÑOL

**387-0038**

13580 SW 56 ST

The SOUTHERN BELL YELLOW PAGES
list every kind of merchandise—
every type of service—by
business heading. Consult it
before buying.

**Letter Shop Service-(Cont'd)**

Florida Present
9550 NW 79th Av NM Gardens ---------- 822-5445
FLORIDATA INC
4500 Biscayne Blvd ---------- 576-5323
Floridata Inc 4500 Biscayne Blvd ---------- 751-5323
GILMORE ASSOCIATES INC
6631 SW 21st Ct Davie ---------- 474-6851
LOGEAR MAILING SERVICES INC
Clubs ● Organizations ● Reunions
Speed - Au-Mat Addressing
Plans Embossed ● Inserting ● Mailing
1035 NE 125th St NM ---------- 895-2492

MAIL, MAN THE
● Creative Artwork
● Electronic
  Typesetting
● Offset Printing
● Fold & Bindery
● Addressing ● Computer Letters
● Cheshire Labeling Machine Inserting
● Mailing Lists - Jumbo 9 x 12 Inserters

MAIL, MAN INC THE
7475 W 20th Av Hih ---------- 558-7230

Mailworks The 11353 SW 40th St ---------- 274-3330
POSTMAN UNLIMITED THE
See Our Ad Under Advertising-Direct Mail
9265 NW 101st St Medly ---------- 884-5000

Use the Southern Bell Yellow Pages.

**TAGS ASSOCIATES INC**
Specializing in Mailing Services
9405 NW 12th St ---------- 591-1963

**Lettering Machines**

CENTRAL AUDIO VISUAL
**KROY™ & MERLIN™**
Lettering Systems
Authorized Dealer
SUPPLIES ● SALES ● SERVICE
1212 S Andrews Av Ft Lauderdale
---------- Miami Tel No— 949-4354

KROY EQUIPMENT
7645 NW 50th St ---------- 599-0415

KROY LETTERING SYSTEMS
● Lettering Systems   **KROY**
● Accessories
● Supplies
Professional quality Type-
on-Tape lettering enhances
any business communication.
A leader in the industry.
● Fast ● Easy ● Economical

"FOR INFORMATION CALL"
AUTHORIZED DEALERS
Consolidated Business Machines Corp
3934 NW 24th St ---------- 871-3040
Merlin Equipment Inc
7645 NW 50th St ---------- 599-0415
Rose Art Supplies 2263 SW 37th Av ---------- 445-1413
T-Square Miami Blueprint Co Inc
998 W Flagler St ---------- 324-1234

MERLIN LETTERING SYSTEMS —
AUTHORIZED DEALER
T-SQUARE MIAMI BLUEPRINT CO INC
998 W Flagler St ---------- 324-1234

**Letters Of Credit**

BANCO DE SANTANDER-MIAMI
AGENCY
1000 Brickell Av ---------- 358-1502
Banco De Venezuela International
800 Brickell Av ---------- 374-0999
COCONUT GROVE BANK
2701 S Bayshore Dr ---------- 858-6666
Country National Bank Of South Florida
See Our Ad Banks
801 NE 167th St NMB ---------- 651-7110
EAGLE NATIONAL BANK OF MIAMI
1550 Biscayne Blvd ---------- 358-6300
ISRAEL DISCOUNT BANK-MIAMI
AGENCY
14 NE 1st Av ---------- 579-9200
NATIONAL WESTMINSTER USA
INTERNATIONAL BANK
1200 Brickell Av ---------- 372-1400
RIGGS INTERNATIONAL BANKING
CORPORATION
800 Brickell Av ---------- 374-2405
TERRABANK N A
1595 SW 107th Av ---------- 227-7788
3191 Coral Way ---------- 448-4898

**Letters—Sign**

Abreu Signs ---------- 556-4038
Acme Real Estate Signs
18454 SW 105th Pl ---------- 253-5036

**BOATNAMES** ---------- 663-0883
Gary Hunt Sign Company 2233 NW 2nd Av- 576-2210
Law's Architectural Signs
3951 NW 27th St ---------- 871-6565
MIAMI SIGN SUPPLIERS INC
3050 SW 38th Ct ---------- 442-1676

SILVESTRI CAST BRASS LETTERS—
*EXCLUSIVE DISTRIBUTOR*
SILVESTRI BUILDERS SPECIALTIES
INC
All Sizes Ready In Stock For Del
4700 NE 2nd Av ---------- 759-1555

UNITED STATES BRONZE
1045 E 28th St Hih ---------- 836-2880
Van Dyke Sign Co 415 NE 2nd Av ---------- 373-2147

**Letters—Sign—Whol & Mfrs**

A M F A K Safety Equipment Co
3160 Coral Way ---------- 446-5766
ADCRAFT VINYL LETTERS
12041 NW 7th Av NM ---------- 688-6288
Dade Sign 19760 SW 101st Av ---------- 232-5655
DURA-PLEX INDUSTRIES
Formed Plastic Letter-Faces
4829 SW 75th Av ---------- 264-8118

**Levels**

JACK MALONE CO
5611 Dewey St Hlwd ---------- 987-8308

**Libraries—Public**

DADE COUNTY OF
101 W Flagler St ---------- 375-2665
Jewish Library Educational Resource
Center 4200 Biscayne Blvd ---------- 576-4030
North Miami Beach City Of
1601 NE 164th St ---------- 948-2970
North Miami City Of
Librarves Main Library
455 NE 132nd St NM ---------- 891-5535
455 NE 132nd St NM ---------- 891-6846
Opa-Locka Public Library
215 Perviz Av Op-Lka ---------- 688-4521

**License Services**

A Stephens Auto Tag Agency
9500 NW 27th Av ---------- 836-1142
(Please See Our Display Ad This Page)
ACTION PERSONALIZED AUTO TAGS
Custom Made While-U-Wait Hand
Painted Originals Monograms - Sports
Logos - Pen Ets, Quantities 1 - 10,000
811 NE 79th St ---------- 758-3581
AIRWAYS AUTO TAG AGENCY
Complete Tag & Title Service
3436 NW 36th St ---------- 634-2626
ALLIANCE AUTO TAG AGENCY
13580 SW 56th St ---------- 387-0038
(Please See Our Display Ad This Page)
Auto Liability Insurance Agency
808 NW 54th St ---------- 759-4401
BAUMGARDNER AUTO TAG AGENCY INC
Specialties - Auto & Boat Titles
Title Transfers - Sales Tax Collected
Auto Tags & All Title Problems
1375 NW 36th St ---------- 638-8000
Camey Auto Tag Agency 8458 Bird Rd --- 226-1231
Cowart Auto Tag Agency
20 W 49th St Hih ---------- 822-4752
Florida Beverage License Inc
1830 NW 7th St ---------- 643-0059
JAV AUTO TAG AGENCY INC
Titles, Tags And Insurance
18954 S Dixie Hwy ---------- 252-1001
Mendez Auto Tag Agency
1550 W 84th St Hih ---------- 822-4003
Miami Auto Tag Agency Ins
5400 NW 22nd Av ---------- 633-1115
MIAMI BEACH AUTO TAG AGENCY

**MIAMI BEACH**   AUTO TAGS & RENEWALS

● TITLE TRANSFERS
● BOAT REGISTRATION
*NOTARY PUBLIC*

999 Washington Av MB ---------- 531-5000
NORTH DADE AUTO TAG AGENCY
INC
1621 NE 163rd St NMB ---------- 945-1372
(Please See Our Display Ad This Page)

( Classification Continued Next Page )